## Alex. De Baril, Plff. in Err., v. Tomas Campoy y. Pardo.

If a writing which is in the possession of the opposite party is required to be given in evidence, notice to produce the original must be given to him or his attorney; and without proof of such notice secondary evidence of the contents of the writing cannot be given.

The fact that the opposite party is in a foreign country, where he resides, does not affect the application of the rule.

Evidence of agency insufficient to submit to the jury.

(Argued March 30, 1887.   Decided April 11, 1887.)

January Term, 1886, No. 304, E. D., before MERCUR, Ch. J., TRUNKEY, STERRETT, GREEN, and CLARK, JJ.   Error to Common Pleas No. 4 of Philadelphia County to review a judgment on a verdict for the defendant in an action of assumpsit.   Affirmed.

The facts as they appeared at the trial are stated in the opinion of the court on a rule to show cause why a new trial should not be granted, by ARNOLD, J.:

This is an action of assumpsit commenced May 19, 1884, by a writ of foreign attachment.   The defendant is a citizen and resident of Spain.   The plaintiff claimed commissions on a contract for the sale of 16,000 tons of iron ore by the defendant to Alfred Earnshaw, the garnishee, which sale the plaintiff alleged that he negotiated; also for services in translating the contract from the Spanish to the English language; and also for money loaned and expended by the plaintiff on account of the defendant.

The plaintiff's dealings were not with the defendant in person, but with his son, Tomas Campoy, Jr.; and the main ques-

NOTE.—Upon the failure of the adverse party to produce the writing, secondary evidence of its contents is admissible.   Davis v. Fireman's Fund Ins. Co. 5 Pa. Super. Ct. 506; Lilly v. Person, 168 Pa. 219, 32 Atl. 23.   If the writing called for is produced, the burden of proving its genuineness is upon him.   Helzer v. Helzer, 187 Pa. 243, 41 Atl. 40.

tion in dispute was whether the son was the general agent of his father. In order to prove the agency the plaintiff compelled the attendance of the son of the defendant by a *subpœna duces tecum,* requiring him to produce all the letters which he had received from his father since he arrived in America, in August, 1881. The son produced a large bundle of letters, from which the plaintiff extracted and used two, one of them dated April 13, 1882, and the other May 13, 1882. It was then asserted by the plaintiff that there was another letter bearing upon the question of agency, dated December 3, or 4, 1881.

The son testified that he had produced all the letters from his father which he had in his possession; that his letters had been in the possession of a Mr. Mares, of Baltimore; that he did not remember whether there was a letter from his father dated in December, 1881, but that if there was, Mr. Mares must have it; that he had not asked Mr. Mares for his letters since October, 1883; and that the last time he saw them was within the last year, when Mr. Mares produced them in the court of common pleas, No. 2, of this county, and they were read to the jury in a case then being tried in that court.

Mr. Earnshaw testified that he entered into a contract with the defendant for the purchase of the iron ore, and that the plaintiff translated the contract; and that by direction from the defendant, he paid the commissions to his son. The plaintiff then proposed to prove by his own testimony, the contents of a letter from the defendant to his son, dated December 3, or 4, 1881, and that he had read the letter to which objection was made on the ground that notice to produce the letter had not been given to the defendant. The evidence was rejected.

In order to enable the plaintiff to produce the letter or prove it by depositions on a commission, or to give notice to the defendant to produce it, so as to prepare the way for the reception of secondary evidence at another trial, I told the plaintiff that I would withdraw a juror and continue the case; but he, acting on his own judgment, refused to accept the offer, and insisted on going to the jury.

It is laid down as elementary law that if a writing which is in the possession of the opposite party is required to be given in evidence, notice to produce the original must be given to him, or, as is more proper, to his attorney. 2 Phillipps, Ev. 10th ed. p. 525.

If the instrument is in the possession of the adverse party, before secondary evidence of its contents can be admitted it must be shown that he has received notice to produce it. Id. p. 519.

In certain cases, although the instrument which is required is not in the possession of the party to the suit, but in the possession of a third person, yet, if there is a privity between such third person and the party, or if the instrument may be considered as under the control of the party, it is deemed to be virtually in his possession; and therefore a notice to produce it, given to the party himself, will, in such cases, be sufficient. Id. pp. 521, 522.

It does not follow that on notice being given, the party is compellable to give evidence against himself; or that, if he refuses to produce the paper required, such a circumstance is considered as conclusive against him; but the consequence will be that the other party, who has done all in his power to supply the best evidence, will be allowed to go into evidence of an inferior kind, and may read an examined copy, or give parol evidence of the contents.

Without proof of notice to the opposite party to produce the original writing, which is in his possession, secondary evidence of its contents cannot, in general, be given. This rule has been made with good reason, that parties may obtain the best evidence in their power. When it is traced to the hands of the opposite party, no further evidence can be given of it, without a notice to produce. Id. pp. 525, 526.

These are the elementary rules. The application of them in the myriad of reported cases shows no material deviation from them.

Where a paper was traced to the hands of an agent of a party, and notice had been given to produce it, and the party showed that it had been delivered by the agent to the stamp officer to have it stamped, the other party was allowed to give parol evidence of its contents. Sinclair v. Stevenson, 1 Car. & P. 582.

It will be observed that in this case notice to produce the paper had been given; and it appearing that the notice had not been served in time, the matter was disposed of on that ground. If a check drawn by a party to a cause is proved to be in the hands of his banker (having been paid), the other party may

call for it under a notice to produce; and he need not call the banker's clerk. Burton v. Payne, 2 Car. & P. 520.

And a paper deposited in a court of equity by a party who has leave to withdraw it is sufficiently under his control and power to let in secondary evidence of its contents, after notice and refusal to produce it. Rush v. Peacock, 2 Moody & R. 162; Jackson *ex dem*. Burr v. Shearman, 6 Johns. 19. But it is otherwise if the document is held by a stakeholder between the party in the cause and a third person. Perry v. Mays, 1 Hill L. 76.

Where it appeared that the muniments of the plaintiff's title were in the hands of his counsel at a former trial, it was held that the conclusion was that he could have produced them if he had pleased; and notice to produce the papers having been served a reasonable time beforehand, it was further held that the defendant had done all that the law required of him to entitle him to give secondary evidence of the execution and con-tents of the papers. M'Kellip v. M'Ilhenny, 4 Watts, 317, 28 Am. Dec. 711.

It will be observed that in that case the court said that the de-fendant, by giving the notice to produce, had done all that the law required of him; from which the converse may be fairly de-duced, that if he had not given the notice, he had not done all that the law required of him before offering secondary evidence.

To the same effect is Irwin v. Lever, 2 Fost. & F. 296. The *semble* which the reporters put in the syllabus, that it would have been so even without notice to the attorney, must be confined to the agent and not to the principal, as to whom notice is not dispensed with.

In general it may be said that the fact of agency cannot be proved by parol while the written evidence of it exists (McKinney v. Leacock, 1 Serg. & R. 27; James v. Gordon, 1 Wash. C. C. 333, Fed. Cas. No. 7,181; May v. May, 1 Port. [Ala.] 229); nor can the declarations and acts of a man be given in evidence to prove that he is the agent of another (Plumsted v. Rudebagh, 1 Yeates, 502; James v. Stookey, 1 Wash. C. C. 330, Fed. Cas. No. 7,184; Whiting v. Lake, 91 Pa. 349; Owens v. Evans, 40 Phila. Leg. Int. 26).

There are, however, some exceptions to this; as, for instance, when the defendant alleged that he had settled with the agent, who was also the wife of the plaintiff, and offered a witness to

prove that he saw the power of attorney and what its contents were, it was held that while the defendant must produce the writing or give notice to produce it, so as to entitle him to give secondary evidence of its contents, yet he might give evidence of the plaintiff's admission that he had given the power (Curtis v. Ingham, 2 Vt. 289); and this without previous notice to produce it; but as to this last, the learned annotator to 1 Phillipps on Evidence puts a query on page 515, note 143; and so where it is plain that the notice would have been unavailing, as in the case where it is proved that the power of attorney has been destroyed by fire, in that case the person to whom the power was given was admitted to prove its contents (Jackson *ex dem.* Livingston v. Neely, 10 Johns. 374; Cornett v. Williams, 20 Wall. 226, 22 L. ed. 254); and also where the paper is proved to be lost or destroyed (Fox v. Wood, 1 Rawle, 143; Burton v. Driggs, 20 Wall. 125, 22 L. ed. 299). But the loss of the power of attorney must be first proved, before receiving secondary evidence of the declarations of the principal as to its contents. (De Haven v. Henderson, 1 Dall. 424, 1 L. ed. 206; Vanhorn v. Frick, 3 Serg. & R. 278).

The statement in Burton v. Driggs, 20 Wall. 125, 22 L. ed. 299 (that if books or papers, necessary as evidence, be in the possession of a person living in another state, secondary evidence may be given to prove the contents of such papers, and that notice to produce them is unnecessary), must be confined to cases like that, in which the books and papers were in the hands of a third person, who was not subject to the control of the opposite party; in which case notice would be useless, and of which books and papers the evidence offered was a copy of a lost deposition which proved the contents thereof.

In this state the rule has always been strictly adhered to; and if a party desires to prove the contents of a paper which is in the hands of his adversary, notice to produce it must be given. Alexander v. Coulter, 2 Serg. & R. 494; Eilbert v. Finkbeiner, 68 Pa. 243, 8 Am. Rep. 176.

But to this there are some exceptions, as in trover, replevin, and detinue, and other actions directly upon the paper, the plaintiff may give parol evidence of its contents, without giving notice to produce the paper, because the form of the action gives all the notice that is required. M'Clean v. Hertzog, 6 Serg. & R. 154.

And so it is in England (Hammond v. Plank, Peake N. P. Add. Cas. 90; Scott v. Jones, 4 Taunt. 865; How v. Hall, 14 East, 274; Bucher v. Jarratt, 3 Bos. & P. 143); and against a carrier for the nondelivery of written instruments (Jolley v. Taylor, 1 Campb. 143); and so on an indictment for stealing a bill no obligatory proof of its contents may be given without notice to produce, differing in this respect from the English rule (Com. v. Messinger, 1 Binn. 273, 2 Am. Dec. 441).

And on an indictment for forging bank notes, parol evidence of letters received by the defendant from an accomplice may be given without a notice to produce them (United States v. Doebler, Baldw. 519, Fed. Cas. No. 14,977); because otherwise guilty persons might escape, as it is not in the power of the government to withdraw the case from the jury and put the defendant in jeopardy a second time.

Where the party to be affected by a letter is a merchant, it will be presumed that he kept a letter book, which would have afforded better evidence than mere parol proof of the contents of the letter; therefore, when sufficient notice to produce the letter book has not been given an extract from a lost letter cannot be given in evidence. Dennis v. Barber, 6 Serg. & R. 420; Coxe v. England, 65 Pa. 212.

The question whether proof that a paper is out of the state will, alone, be a sufficient foundation for secondary evidence of its contents, without further efforts to obtain it, has been decided in the negative in Connecticut and Louisiana. Townsend v. Atwater, 5 Day, 298; Lewis v. Beatty, 8 Mart. N. S. 287.

In Kentucky secondary evidence of a paper proved to be out of the state was admitted, the court likening the case to that of a subscribing witness who is absent from the state. The fact that there was such a paper came out on cross examination; and the question whether notice to produce it was required was not mooted. Boone v. Dyke, 3 T. B. Mon. 532.

In New York a paper so situated is allowed to be proved on a commission, without requiring it to be produced in court. Bailey v. Johnson, 9 Cow. 115.

In South Carolina a party offered parol evidence of a paper which was in the hands of his agent, who had gone to another state; and it was held inadmissible, because no commission had been sent to examine the agent or ascertain what had become of the paper, and there was, besides, some reason for suspecting

a design to suppress it. The question whether notice to produce was necessary did not arise, as the evidence was offered by the principal; but the judgment is important in this respect, it attributes the suppression of the paper to the principal, because it was presumed to be in his control; and if the other party had offered the evidence, it would have been admitted, provided notice to produce it had been given. Bunch v. Hurst, 3 Desauss. Eq. 290, 5 Am. Dec. 551. See also, as to whom the consequence of the suppression of a paper is to be imputed, Hart v. Yunt, 1 Watts, 253.

In this state a deposition which went to prove the contents of a paper was rejected, because it was not shown that the paper was unattainable. M'Kee v. Reiff, 4 Yeates, 340.

The great desire of the court in insisting upon the best evidence of the contents of a paper, by requiring its production, on notice, or proof under a commission, before receiving secondary evidence of its contents, is to save the party to be affected by it from a parti-colored account of the paper, when better evidence can be had. Dwyer v. Collins, 7 Exch. 639.

The present is a case in which the wisdom and justice of the rule are so plain that they cannot be gainsaid. The defendant is in Spain, where he resides. His case here is defended by his counsel, who is without a client to advise or witnesses to assist him. He can do nothing but look on and see that his client is condemned on legal evidence only, and to prevent the reception of any evidence which is improper. If, as the plaintiff alleges, the son of the defendant was also his agent, his counsel was entitled to reasonable notice to produce the letter which is said to have been written, but not proved to be lost, which vitally affects the case, and which is potentially in his possession or control, and of which he may be presumed to have a copy which he could have produced, in case he could not get the original; otherwise, he might be overwhelmed by what Mr. Justice Woodward, in Ellis v. Guggenheim, 20 Pa. 287, called the "compendious criticism" of a witness, himself an interested party, who would give his interpretation of the letter, rather than its contents.

The letters of April 13, and May 13, 1882, do not prove that the defendant's son was his general agent. They merely show that the defendant authorized his son to sell the iron ore on a commission fixed by the letters. It seems too plain to require any citation of authority to show that an agent authorized to

sell on a commission is not a general agent, and that he has no power to employ other agents under him at the expense of his principal; nevertheless, if authority be wanted, the principle may be found in the maxims that one agent cannot lawfully appoint another in his place, for a delegated authority cannot be redelegated (Broom, Legal Maxims, *839, § 40); and the application of the principle may be found in Hill v. Canfield, 63 Pa. 77.

If the agent does employ another, he is responsible for the acts of his substitute or assistant (Bradstreet v. Everson, 72 Pa. 124, 13 Am. Rep. 665; Morgan v. Tener, 3 W. N. C. 398), and consequently liable for his compensation.

The commissions agreed to be paid include all that the principal is liable for, and they cannot be increased without his consent (Freeman v. Shreve, 86 Pa. 135); otherwise he might be called upon to pay away the entire proceeds of his property to a succession of brokers not selected by himself, but depending upon each other for authority.

The letter from the defendant to the plaintiff, dated February 4, 1882, is simply an expression of thanks for the kindness of the plaintiff to the defendant's son, and the solicitude of the father for the welfare of his son. It contains nothing of a contractual nature, nor any admission that the son was invested with unlimited authority to bind his father. If such letters are to be perverted so as to raise an obligation to pay for the amenities of life, the writing of letters of courtesy and interchanges of civility must cease, unless they are accompanied with a protest that they are not intended as an acknowledgment of a liability to pay for the amenities bestowed, and are concluded with a *nota bene* that they are sent "without prejudice."

As there is nothing in the evidence to prove that Tomas Campoy, Jr., was the general agent of the defendant, the claim of the plaintiff lacks this material prop to support it, and the jury were properly instructed to render a verdict for the defendant.

The following are the letters of April 13, May 13, and February 4, 1882, heretofore referred to, written by Tomas Campoy y Pardo to his son:

Translations of inclosures in letter of Tomas Campoy y Pardo to his son, dated Portman, April 13, 1882. Private.

Tomas, the business that you do with Mares, I cannot give

more than what I tell you both in the letter, on account of furnishing you superior ore; but if the offer which I sent you is accepted by a good house, whether it be for the whole amount which I say or for one half of it, you may count on it that I will give you for commission five cents per ton and besides five cents per unit gained over 50 per cent. You see this is half of the profits for you, and the other half for me. Keep all this to yourself; and whenever those conditions are accepted you must rely on what I said. Now try to do business; but the most important is to deal with good houses. Tomas, be careful of what you are doing on account of your being there. All parties here have contracts for minerals except myself.

Preparing for your transactions I have accumulated stocks, but am in need of funds; tell me how much money you have received this year from Messrs. Holloway Bros. Make Mares, if you both want me to send some cargoes besides the one I am going to send, remit drafts on Barcelona on signing bills of lading. If not I cannot send you any more than the one cargo. Your brothers-in-law all have gone away, as they consider it humiliating to stay with me earning a salary. If the contract is accepted, telegraph me.

Tomas, I approve with pleasure your arrangements with Mr. Mares, and you may rest easy that if you have little business and I make any contract with Earnshaw direct, I will write him, particularly if I obtain two reals more per ton, and will tell him what he has to give you apart of what I give you both for commission. You will understand that the letter will be in a form to be presented to Mr. Mares and Earnshaw. It is convenient to hurry, stirring up business for next year, but in some way not showing great audacity.

Portman, May 13, 1882.

Dear Son: I have received yours of the 25, April, and I am informed of its contents, seeing that you are well, and, thank God, we are the same at present. Tomas, what you tell me, referring to business, that you have formed a partnership with Mr. Mares, is all right; and it is necessary that you notify me in time if at any time you should make any contracts that any document that you should require to be sent, whether it is to be named or entitled Campoy & Mares or Mares & Campoy, for me to have an understanding of all the business. In reference

to what you say, that I must speak to Bapata, to ask him to fix a commission for you. I do not speak to him (particularly on business), as you know how mean he is; and in this bad season that I am passing through, he has injured somewhat my business; still I have sent him word through his nephew. What you ought to do is to address him a letter, as though you had not heard from me, saying that on account of having formed a co-partnership with a gentleman of that place (without telling him who he is), that it is necessary for him to fix a commission, as otherwise you will not be able to attend to his business; but I must warn you that when he replies to you or to Mr. Mares, with the purpose of doing business direct with you both, and you should accept some contract, I would withdraw my connection with you immediately, because you know as well as I do that he would establish opposition to me at the mines. To make the business a success it would be convenient that you both should take hold of all the foundries possible, as I have most of the mines and animals necessary. You had better tell this to Mr. Mares, for him to bear in mind all these convenient particulars, because these indications are the principal bases to obtain good minerals, which could not be done without several parties.

Your question about what commission I will give you both, I have told you on several occasions that for both to have a success I cannot give you the minerals at less than thirty-four reals per ton, alongside of vessels; and with that idea I have closed for two years the Escondrigo, which is the best of the mines, as you know very well that it costs there fifteen reals per ton, fifteen reals transportation and four reals shipment. I have no other advantages than the proximity of the mines and what I may earn in shipments and advances in dispatch money, as I have established four gangs, and when the opportunity is offered I can ship 600 tons or more in a working day, and you can make the difference in price, besides half of the percentage gained over 50% and half of the dispatch money as this is the custom here. Do not Jew me down too much in the arrangements, as you know that this would prevent me from procuring good minerals, and the prejudice would be against me and you also. Above all, do not be ambitious, because to become rich does not require haste. Do not forget in making contracts that the moisture is to be deducted from the weight and not from the

units. Nothing else at present. Our compliments to Mr. Mares, and love for you from all the family.

Your Father,<br>Tomas Campoy.

February 4, 1882.

My Dear Sir:—

I received yours dated January 11, by which I see with pleasure the pleasant relations which my son has together with yourself; because, as you may understand, my desire is that he avail himself of friends that will not deceive him, and will advise him and guide him in what he is ignorant of; consequently your assurance has filled me with satisfaction. With respect to what you tell me with regard to business, my object in sending him there has been solely for that purpose, and the only thing that delays me in pushing this business is the waiting till he is acquainted with the language and customs of the country, as well as the manner of conducting business, and (on the other hand) besides the vessel freights are so high that they exceed the ordinary costs of seven or eight shillings. Notwithstanding what I here say of the stacks of (iron ore) that have accumulated since he left me, I am putting aside superior qualities with the object of sending them to him in a cargo of 500 to 600 tons, so that he may examine them and my son ascertain the way of making contracts and————what it interests me is to send cargo on my own account by contract and on these particulars, I have already given my instructions and I————you that what would suit me better will be making contracts for large quantities. I believe the freights being as I mention there is better chance of obtaining them there than here, and besides it is necessary that funds should be placed by people who contract for the ore, in the Bank of London, to be able to draw against them; for, as you know, if the contract should be a large one, it would not be possible to send many vessels, or hope for a realization of their cargoes there (in America.) Without further to note to-day, I thank you for the interest you manifest in my son and business, and I avail myself of this to assure you, I am,

Yours Truly.

The assignments of error specified: (1) The refusal of the court to admit evidence as to the contents of the letter of De-

cember 3, 1881; (2) the rejection of the letter of February 4, 1882; (3) the refusal to allow testimony as to the kind and value of services rendered by the plaintiff; and (4) the instruction of the court to find for the defendant.

*William Drayton,* for plaintiff in error.—The reason of the rule requiring a notice to produce before offering parol testimony is to notify the person who has control of a paper to produce it. Here we did notify the very person who naturally would have such control, who had last had the letter and who testified on the stand, not that he had returned it to his father or to his father's counsel, but that he had left it in a foreign jurisdiction. Having thus accounted for its absence plaintiff was entitled to proceed; for proof that a letter is beyond the jurisdiction of the court is identical with proof of its destruction, and secondary evidence is admissible. Burton v. Driggs, 20 Wall. 125, 22 L. ed. 299; Fox v. Wood, 1 Rawle, 143.

This is so when it is known beforehand that the paper is out of the jurisdiction; but when it is ascertained before the trial that the paper is in the possession of a witness, the fact that it is removed from the jurisdiction, without the knowledge of the party seeking to use it, will excuse him from further efforts; as in Leeds v. Cook, 4 Esp. 256, where a letter was before the trial handed over, by the witness subpoenaed to produce it, to one of the parties, the letter not being produced, Lord ELLENBOROUGH said he would admit evidence of its contents; that it belonged to the witness called and was subtracted in fraud of the subpoena.

In England the general rule is that if the fact is known prior to the trial that a document is out of the jurisdiction of the court, a demand must first be made on the party known to possess the document. Boyle v. Wiseman, 10 Exch. 647, 11 Exch. 360; Crispin v. Doglioni, 32 L. J. Prob. N. S. 109.

But it must be made on the party legally entitled to the custody. Freeman v. Arkell, 2 Barn. & C. 494; Crispin v. Doglioni, 32 L. J. Prob. N. S. 109.

The American rule is that if from the nature of the case itself it is manifest that a more satisfactory kind of evidence exists, the party will be required to produce it; but where the nature of the case does not of itself disclose the existence of such better evidence the objector must not only prove its existence, but must also prove that it was known to the other party in

season to have been produced at the trial.   1 Greenl. Ev. §
84, note 2.

If, therefore, the paper is in the possession of one who refuses,
on the ground of privilege, to produce it, secondary evidence
may be given of its contents.   Ditcher v. Kenrick, 1 Car. & P.
161; Marston v. Downes, 6 Car. & P. 381, and Mills v. Oddy,
6 Car. & P. 732; Doe *ex dem.* Gilbert v. Ross, 7 Mees. & W.
121; Newton v. Chaplin, 10 C. B. 356; Lynde v. Judd, 3 Day,
499.

These are all cases where attorneys who had been subpœnaed
to produce papers refused, on the ground that they held them as
attorneys for third persons, and in every case secondary evi-
dence was admitted.

If the paper is out of the jurisdiction of the court, and in the
possession of one who refuses to allow it to be brought in, sec-
ondary evidence is of course admissible.

Carpenter v. Bailey, 56 N. H. 283, was the case of a letter,
on the files of the Navy Department, alleged to contain a libel.
The secretary declined to permit its removal, and parol evidence
of its contents was given, and not by deposition.

United States v. Reyburn, 6 Pet. 352, 8 L. ed. 424, was the
case of a privateer whose papers could not be obtained.

Nor is there any difference between a copy and parol evidence
of contents.   If the oral testimony is clear as to the language
used in the letter, it is for the jury to say whether the statement
is correct or not; and the judge had no right to take it from
them.

The party offering the testimony is expected to show that he
has in good faith exhausted in a reasonable degree all the sources
of information which the nature of the case suggests.   Vaughn
v. Biggers, 6 Ga. 188.

If books or papers necessary as evidence in a court in one
state be in the possession of a person living in another state, sec-
ondary evidence may be given to prove the contents of such
papers, and notice to produce them is unnecessary.   Burton v.
Driggs, 20 Wall. 125, 22 L. ed. 299.

The person in whose possession the paper is last seen is the
proper person to notify.   Waller v. Cralle, 8 B. Mon. 11; Stir-
ling v. Buckingham, 46 Conn. 461.

The error in the mind of the judge who tried the case was
caused by a confusion between letters written to the opposite

party by the plaintiff or defendant; in which case it is, of course, necessary to give notice to produce before offering secondary evidence, as in Pratt v. Patterson, 81 Pa. 115; Marsh v. Hand, 35 Md. 123, and papers written by the opposite party to third persons. In the latter case notice or a subpœna should be served on the recipient of the letter alone.

See also Shepard v. Giddings, 22 Conn. 282; Eaton v. Campbell, 7 Pick. 10; Boone v. Dyke, 3 T. B. Mon. 532, where the mere fact of a paper being out of the jurisdiction of the court was held sufficient, although before trial this fact was known to the party offering secondary evidence of its contents. Binney v. Russell, 109 Mass. 55; Mauri v. Heffernan, 13 Johns. 58; Moody v. Com. 4 Met. (Ky.) 4; Shorter v. Sheppard, 33 Ala. 648; Wisconsin River Lumber Co. v. Walker, 48 Wis. 614, 4 N. W. 803; Burnham v. Wood, 8 N. H. 334; Dunbar v. Marden, 13 N. H. 311; Waller v. Cralle, 8 B. Mon. 11; Moore v. Beattie, 33 Vt. 219; Alivon v. Furnival, 1 Cromp. M. & R. 291.

The cases which closely resemble the one before the court are Brown v. Wood, 19 Mo. 475, and Hibberd v. Knight, 2 Exch. 11.

Where a deed is in the possession of a person, which he is not obliged to produce in answer to a subpœna, you may give secondary evidence of its contents. Marston v. Downes, 6 Car. & P. 381, and Mills v. Oddy, 6 Car. & P. 732.

In Pennsylvania all that is required is a search among the papers of the person into whose possession the papers in question are last traced. Where a deed was written by a conveyancer from a father to a daughter, and the daughter had given all her papers to her father, and after his death, her brothers swore they had never seen the deed, and there was a notice to produce, but no proof of search, it was held sufficient to introduce secondary evidence. Emig v. Diehl, 76 Pa. 359.

Where the witness testified he had looked among all his papers and could not find it, proof of the contents of a letter seven years old was admitted. Brown v. Day, 78 Pa. 131.

In Spalding v. Bank of Susquehanna County, 9 Pa. 28, parol proof of a release was admitted where it had been in the possession of one C., who had left the state. His books and papers, left in Pennsylvania, were searched here, and witness had inquired of C.'s wife, who said she had no business papers in her possession. Held sufficient.

After proof that the son acted as agent the court should have admitted proof of what was done by plaintiff in furthering the very contract brought about by plaintiff's aid. Reed v. Ashburnham R. Co. 120 Mass. 43.

Services rendered to an agent, outside of the scope of his duty, cannot bind the principal; but it is equally clear that an agent has power to bind his principal within the scope of his duties. Williams v. Getty, 31 Pa. 463, 72 Am. Dec. 757.

Any recognition of similar services by a principal will bind him, more especially when the agent stands in the relation of child or wife. Thus it was held in Tucker v. Woolsey, 6 Lans. 482, that an agent sent here to sell his principal's goods might bind his principal for rent of a place to store the goods.

In Mundorff v. Wickersham, 63 Pa. 88, 3 Am. Rep. 531, where a clerk signed a receipt for a note which included a promise to protect it at maturity, held, the principal was bound by this promise, although it did not appear he had authorized it.

In Kelsey v. National Bank, 69 Pa. 426, where a cashier with the approbation of some of the directors offered a reward for the apprehension of a thief, held, the bank was bound, although not formally notified. Held, further, that the circumstance of its being a small town would imply a knowledge.

M'Cord v. Bergautz, 7 Watts, 487, is authority for the fact that it is absurd to say that you trust a man to exercise the most extensive authority over land for your benefit, but he must not save it from utter loss as by paying taxes.

The same rule applies to persons and corporations. Tanner v. Oil Creek R. Co. 53 Pa. 411; Adams Exp. Co. v. Schlessinger, 75 Pa. 256.

As to the inference of notice to principal, Bredig v. Dubarry, 14 Serg. & R. 30, is directly in point.

Where services are requested by a third party for one not connected with him, such request will be ground for an action. Berry v. Pusey, 80 Ky. 166.

This is stronger when it is the case of a father or husband. Van Valkinburgh v. Watson, 13 Johns. 480, 7 Am. Dec. 395.

And much greater weight is given to acts of a son who is acting in any capacity for his father than to those of an outsider. Valentine v. Packer, 5 Pa. 333. So that, even if the agency is narrowed down to obtaining contracts for his father, and not even making them himself in his father's name, which last is

certainly inferred, if not proved, the evidence of acts done at the son's request for his father in furthering and obtaining these contracts—acts which Mr. Earnshaw shows were necessary and proper—should have been submitted to the jury, together with evidence of the agent's instructions to plaintiff, especially in view of the fact that the father admits that he knew that his son was receiving services, and speaks freely of his intention and mode of doing business in America. Foster v. Berg, 14 W. N. C. 215.

*Richard C. McMurtrie,* for defendant in error.—The letters produced were not sufficient to authorize an employment by the son for the father at the expense of the father.

To anyone familiar with the usages of factors of any kind it did seem this was not arguable. I employ a broker to sell my house or iron. Has the newspaper who advertises the property by direction of the broker, or the person employed to post the notices, a claim on me?

It is assumed by the plaintiff in error that the only point involved in the question as to the admissibility of secondary evidence of the contents of the letter was that a party having subpœnaed a witness in whose custody the paper is, on proof that it is without the jurisdiction, can state his recollection of the contents.

There is nothing in the bill of exceptions to show that there was a proper effort to compel the production of the original. There was no notice to produce the letter—or a copy.

The paper consisted of a letter alleged to contain an agency to hire at the cost of the principal. Such a paper as that was the property of the defendant quite as much as of the agent. It was almost certain that he would have a copy, and quite probable that he could produce the original, if he had any reason to suppose it was wanted.

But the evidence wholly failed to establish the existence of such a letter, so as to lay the foundation for proof of contents.

The existence of the original is not proved but assumed.

PER CURIAM:

There is no error in this record. The action of the court in directing the jury to find in favor of the defendant is well sus-

tained by the opinion of the learned judge in overruling the motion for a new trial.

The evidence relating to the letter and its contents was properly rejected.

Judgment affirmed.