Klein, Exrx. *v.* May Stern & Company, Appellant.

Argued October 16, 1940.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT,
JJ.

*Louis Caplan,* of *Sachs & Caplan,* for appellant.

*Eli E. Reich,* for appellee.

OPINION BY HIRT, J., April 18, 1941:

On April 10, 1937 Leon S. Klein entered into a
written agreement with defendant for the sale of his
retail furniture business in New Kensington, including
goodwill and the entire stock of merchandise and equip-
ment, reserving only the cash and accounts receivable.
Defendant undertook to pay Klein his cost of the new
merchandise on the floor; to pay for other furniture or
merchandise at values to be determined by an appraisal,

and the original cost of a truck less 25% for each year it had been in use. As a part of the consideration the defendant also agreed as follows: "The Buyer will, in connection with the operation of its retail furniture business upon the said premises at No. 824 Fifth Avenue, New Kensington, Pennsylvania ...... endeavor to collect the installment lease accounts of the Seller in the same manner and by the same methods as the Buyer uses in the collection of its own accounts, and will accept payment on the said accounts of the Seller for the account of the Seller, without any cost to the Seller. ...... The Seller shall have the right, at all reasonable times, to inspect the records of the collections of the said accounts and of the status thereof." The sale was consummated on May 3, 1937. At that time Klein had a cashier and bookkeeper in his employ, a Miss Thompson, who for many years had been in charge of his collections on furniture leases and other accounts. On the recommendation of Klein, Thompson was continued in a similar capacity in the employ of defendant and under the direction of defendant made the collections on Klein's installment accounts after the sale was consummated. Between May 1, 1937 and February 1938, Thompson, while in the employ of defendant, appropriated to her use $1,330.31 of the moneys collected on the Klein accounts. During this period defendant had no reason to believe that Thompson was dishonest and there is nothing in the record charging Klein with knowledge that she was not trustworthy at the time he recommended her to defendant.

The case, tried on stipulated facts before RICHARDSON, J., without a jury, resulted in a final judgment in favor of Klein's executrix against the defendant for the amount embezzled by Thompson. Defendant appealed. We are of the opinion that in the application of settled legal principles, the judgment must be affirmed.

Defendant was not a gratuitous agent of Klein; its agreement to make collections "without cost to the

Seller" was part of the consideration for the sale. But even if the undertaking were gratuitous, defendant would not be relieved from liability thereby. *Opie v. Serrill*, 6 W. & S. 264. The basic question involved is whether there was privity between Klein and Thompson in the agreement relating to the collection of his accounts. If she was in fact Klein's agent or servant the loss must be borne by his estate. From the record, however, it is clear that neither relationship existed with Klein. By the agreement defendant became Klein's collection agent and by the stipulated facts Thompson was no more than a subagent in the employ of defendant. The relationship is clearly established by the terms of the sales contract wherein defendant assumed a fiduciary relationship with Klein, undertaking to collect his accounts with the implied power of binding Klein by its transactions with his former customers by receiving payment and executing acquittances. Thompson was not a party to the agreement and was not mentioned in it. If Thompson be regarded as defendant's servant merely, plaintiff is entitled to recover, for an agent is liable to his principal for the misappropriation of the latter's property by the agent's servants. *Caplan v. Ebel*, 73 Pa. Superior Ct. 601.

The relation of a subagent to a principal is discussed in a number of our cases. In *Bradstreet v. Everson*, 72 Pa. 124 the defendant, a mercantile agency, was plaintiff's collecting agent and it was held that defendant was liable for the default of its subagent in failing to pay over the amounts received on certain acceptances received from plaintiff by defendant "for collection." In *Pownall v. Bair*, 78 Pa. 403 it is stated: "The rule is settled that a sub-agent employed by an agent is, in general, only accountable to the agent, and not to the principal, for there is no privity between the principal and the sub-agent." *Morgan v. Tener*, 83 Pa. 305 is authority for the rule that an attorney employed to collect a claim who places it in the hands of another

is liable for the misconduct of such other in the absence of an express stipulation to the contrary. The same principle was applied in *Siner v. Stearne*, 155 Pa. 62, 25 A. 826. See also *Riddle v. Poorman*, 3 P. & W. 224; *Krause v. Dorrance*, 10 Pa. 462.

A more recent statement of the rule, consistent with the application of the principle in the cases in this State, appears thus in Restatement, Agency, §406: *"Unless otherwise agreed,* an agent is responsible to the principal for the conduct of a subagent with reference to the principal's affairs entrusted to the subagent, as the agent is for his own conduct ......" And in §5 "subagent" is defined as "a person to whom the agent delegates *as his agent,* the performance of an act for the principal which the agent has been empowered to perform through his own representative." In the comment following each of the above sections it is indicated that liability for the acts of a subagent is imposed on the principal only by his express or implied agreement or by the usages or customs of the business, even though it is contemplated by the parties that the acts will be performed through representatives of the agent. The same principle is thus stated in 2 Mechem on Agency, §333: "The agent, having undertaken to transact the business of his principal, employs a sub-agent on his own account to assist him in what he has undertaken to do, even though he does so with the consent of the principal, he does so at his own risk and there is no privity between such sub-agent and the principal. *The sub-agent is, therefore, the agent of the agent only.* (Emphasis added.) The fact that defendant was a corporation which of necessity must act through natural persons as its agents or employees, does not in itself amount to an implied agreement to assume liability for the acts of the sub-agent. When a corporation is made the agent of another the relation between it and the agents or instrumentalities through which it acts is as one being, or artificial person, in the performance of its engage-

ment, and involves no delegation of powers. 14a C. J. §2141.

It is contended that the foregoing principles are in conflict with the following rule relied upon by defendant: "Where an agent has authority to employ sub-agents, he will not be liable for their acts or omissions, unless in their appointment he is guilty of fraud or gross negligence, or improperly cooperates in their wrongful acts or omissions." *Weaver v. Foundation Co.*, 310 Pa. 310, 165 A. 381; *White et ux. v. Macoubray*, 309 Pa. 266, 163 A. 521; *Harrison v. Van Gunten*, 15 Pa. Superior Ct. 491. From an examination of these decisions it is at once apparent that they deal with the tort liability of the agent, not 'to the principal, *but to third parties*, for the acts of the sub-agent. And that "sub-agent" is used in the sense of one appointed by the agent 'for a disclosed principal as an *agent of the principal* upon authority, either express or implied, conferred upon the agent by the principal. The rule determining liability to third parties, has no application in a proceeding brought by a principal against his agent upon the failure to perform agreed services. In *Sergeant v. Emlen*, 141 Pa. 580, 21 A. 663 referred to by defendant, the controlling facts as found by the court are that the defendant was a collecting agent and that the person whose default was sought to be charged to him was not a sub-agent of defendant but was in reality a "fellow-agent" appointed by plaintiffs themselves. The absconding agent owed duties directly to the plaintiffs and there was privity between them. For these reasons recovery by plaintiffs against one of their agents for the misappropriations of funds by another agent was denied.

Klein did no more than commend Thompson to defendant and when once employed she became defendant's servant or agent exclusively. There is nothing in the stipulated facts which required defendant to continue her in its employ nor to entrust her with the col-

lection of Klein's accounts. Defendant by the agreement was obliged merely to endeavor to collect the accounts "in the same manner and by the same methods as the buyer uses in the collections of its accounts." The agreed statement of facts recites: "The said Thompson was authorized to make collections and receive payments on installment lease accounts *by the defendant corporation.*" Klein did not have the right to supervise or control Thompson's acts; she was paid by defendant and was subject to dismissal by it at any time. The fact that plaintiff reserved the right to inspect the record of his collections gave him no right of supervision over the manner by which, or the person by whom such collections were to be made. Since there was no privity between plaintiff and Thompson, and no stipulation between Klein and defendant limiting defendant's liability for the acts of its employee, Thompson, it follows that on the doctrine of respondeat superior, defendant must bear the loss occasioned through Thompson's defalcations.

Judgment affirmed.