## McKnight, Appellant, *v.* Peoples-Pittsburgh Trust Company.

Argued October 4, 1948. Before MAXEY, C. J., DREW, LINN, PATTERSON and STEARNE, JJ.

*Bradley McK. Burns,* for appellant.

*Alex. A. Garroway,* with him *Norman R. Schade* and *Campbell, Houck & Thomas,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, November 8, 1948:

This is an action in assumpsit to recover compensation on an alleged oral contract for personal services.

Peoples-Pittsburgh Trust Company (now Peoples First National Bank and Trust Company, hereinafter referred to as "the Bank") was owner of overdue mortgages against the Brighton Theatre, in Pittsburgh, and the Roxian Theatre, at McKees Rocks. In lieu of foreclosure the owners of the Brighton Theatre, on November 10, 1931, voluntarily conveyed to Francis H. McKnight, employed by the Pittsburgh real estate firm of George Brothers on a salary and commission basis, as straw man for the Bank, and thereupon McKnight, at the direction of W. D. George, a partner of the firm of George Brothers as well as a director and real estate consultant for the Bank, took charge as manager of the Brighton Theatre. On May 4, 1932, the Bank assumed control of the Roxian Theatre, as mortgagee in possession, subsequently acquiring title by foreclosure on November 26, 1932, and McKnight was also put in charge of this theatre by W. D. George. Both theatres were managed by McKnight until June, 1942, when he entered military service, conveying title to the Brighton Theatre to another straw party, John S. C. Herron, also an employee of George Brothers.

At the time of assuming management of the Brighton Theatre, McKnight was co-manager of the Investment Building, Pittsburgh, under the management of George Brothers, receiving as compensation one-third of the total commissions received by George Brothers. He was relieved of these duties but continued to receive one-third of the commissions until 1934, when he was made manager of the Investment Building and thereafter received a salary of $200 per month, raised to $250 per month in 1937, plus a commission on sales. In addition McKnight deducted from the operating profits of the theatres $30 per month, increased to $55 per month in 1935, as an expense account, and a testimonial check in the sum of $300 was given him by the Bank upon his leaving for military service. In 1945, while McKnight was in military service, the theatres were sold by George Brothers and he received no part of the commissions realized on the sales. Prior to his military separation he requested additional compensation from George Brothers for his services in developing the theatres for sale, and when they refused to pay anything additional, taking the position that full payment had been made for the services rendered, McKnight instituted this action to recover additional compensation from the Bank.

In his statement of claim McKnight avers that his services in managing, operating and developing the theatres were rendered pursuant to an express contract with the Bank, orally made with W. D. George as the Bank's duly authorized agent; that the value of the services is $43,842.74, "which sum defendant promised and agreed to pay"; and that there is due and owing a balance of $43,542.74, representing the alleged value of the services less the $300 testimonial check given him by the bank at the time of his entering military service. The Bank's affidavit of defense denies liability, averring that its contract for the management and control of the theatres was made solely and exclusively with George Brothers, through W. D. George, and that

any services performed by McKnight were done and performed as an employee of George Brothers. At the conclusion of McKnight's evidence on liability the court below entered a compulsory nonsuit, which it subsequently refused to take off, and this appeal was then taken.

The evidence is clearly insufficient to establish a contractual relation with the Bank as alleged. It was at the sole direction of W. D. George that appellant assumed the management of the theatres. He used office facilities and stenographic services provided and paid for by George Brothers. The many problems arising in connection with the management and development of the theatres were discussed with W. D. George and not with any officer of the Bank. An exhaustive analytical study of the operation of the theatres was made by appellant in conjunction with John S. C. Herron, an employee of George Brothers. During the ten years appellant operated the theatres he at no time discussed the subject of compensation with any officer of the Bank but on a number of occasions discussed it with W. D. George. Correspondence was conducted on letterheads of George Brothers and in most instances was signed "George Brothers, by F. H. McKnight." Monthly statements were forwarded to the Bank via the office of George Brothers and the Bank's acknowledgments were sent to appellant in care of George Brothers. Viewing all the evidence in the light most favorable to appellant and giving him the benefit of every legitimate inference (*Kilpatrick v. Phila. Rapid Transit Co.*, 290 Pa. 288, 291, 138 A. 830); it would justify at most a finding that appellant was subagent of the Bank, whose agent in the management of these properties was George Brothers.

A subagent, as defined in Restatement of Agency, section 5, is "a person to whom the agent delegates, as his agent, the performance of an act for the principal which the agent has been empowered to perform through

his own representative." As stated in Comments "a" and "b" under this section, "The agreement may be that upon the appointment of such a person the agent's function as agent is performed, and that therefter the person so appointed is not to be the representative of the agent but is to act solely on account of the principal, in which case the one so appointed is an agent and not a subagent. On the other hand, the agreement may be that the appointing agent is to undertake the performance of the authorized act either by himself or by someone else and that the person so appointed while doing the act on account of the principal is also, in so doing, to be the agent of the appointing agent, who consequently will have the responsibility of a principal with respect to such person. If this is the agreement, the person so appointed is a subagent. What the agreement is depends, as do other agreements, upon the manifestations of the parties as interpreted by the usages between them, the customs of business, and all other circumstances . . . The inference is that the regular employees of an agent are subagents."

As subagent appellant has no claim for compensation which he can assert against the Bank. "If an agent employs a subagent, the agent is the employing person and the principal is not a party to the contract of employment, except where, by express promise or otherwise, he becomes a surety. He is not, therefore, subject to pay the agreed compensation . . .": Restatement, Agency, section 458, Comment "a". See also *De Baril v. Pardo*, 6 Sadler 148, 8 A. 876; *Pownall v. Bair*, 78 Pa. 403; *Ward v. Still*, 72 Pa. Superior Ct. 48; *Klein v. May Stern & Co.*, 144 Pa. Superior Ct. 470, 19 A. 2d 566.

At the trial, the court below admitted in evidence, over objection of the Bank, a paragraph from an affidavit of defense filed in a suit brought against it by the Fox Film Corporation, in 1932, admitting "that subsequent to May 4, 1932, F. H. McKnight, an agent of

the Peoples-Pittsburgh Trust Company, was in charge of the Roxian Theatre," which evidence, appellant contends, of itself required submission of the case to the jury, citing *Cherry v. Mitosky,* 353 Pa. 401, 45 A. 2d 23; *Easton School Dist. v. Cont'l. Cas. Co.,* 304 Pa. 67, 155 A. 93, and *Nusbaum v. Warwick Hotel Co.,* 112 Pa. Superior Ct. 277, 170 A. 388. Unlike the pleadings in the cases cited, the averment here relied upon is not necessarily contradictory and inconsistent with the Bank's position in the present case. "As far as the contractual relations between the principal and third persons are concerned, a subagent has the same power as an agent. The distinction between agency and subagency is important only in its effect upon the relations between the principal, agent and subagent": Restatement, Agency, section 142, Comment "b". Any evidentiary value of such unexplained averment was, moreover, nullified by numerous inconsistent admissions, brought out on cross-examination of appellant, including his sworn statements when applying for an insurance broker's license, in 1937, that his employer during the previous five years was George Brothers, with W. D. George as immediate superior, and that he was not associated, in any capacity, other than depositor, with a bank or trust company; his statement in a letter addressed to the Bank's board chairman, in 1942, that "this was an anomalous situation, in which, although I earned plenty of money for Peoples, I was in no way their employee"; and other statements to the same effect.

Our examination of the record sustains the conclusion that appellant failed to make out a case sufficient to submit to the jury. Therefore, the court below did not abuse its discretion in refusing to take off the nonsuit.

Order affirmed.