ROBERT LAPUK ET AL. *v.* CHARLES L. BLOUNT ET AL.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 14-618-4455

Argued April 1—decided August 28—petition for reargument
argued October 7—decided October 14, 1963

*William D. Graham,* of Hartford, for the appellant (defendant Greene-Monroe Corporation).

*Marvin H. Lapuk,* of Hartford, for the appellees (plaintiffs).

*Milton D. Newman,* of Hartford, for the appellee (defendant Blount).

KOSICKI, J. The plaintiffs brought action against the defendant Blount for services rendered and materials furnished at Blount's request in preparation of design and structural plans for an addition to a building owned by the Greene-Monroe Corporation. On application of Blount, the corporation was made a party defendant. A substitute complaint was filed in which it was alleged that Blount had incurred the obligation sued on as agent for the corporation, and judgment was rendered against the corporation; it has appealed. The word "defendant" as used herein shall refer only to the Greene-Monroe Corporation.

The facts as found by the trial court, with the additions and corrections to which the defendant is entitled or which were admitted or undisputed facts, may be summarized as follows: The defendant owned a building on Main Street in Hartford to which it proposed to construct an addition intended for business uses. Early in April, 1960, it engaged Blount to furnish a complete set of plans which would meet with the approval of the Hartford building inspection department and would enable the defendant to proceed with the addition. Blount was

a carpenter by trade and was also a part-time student of architecture at the University of Hartford. Although he had on a previous occasion furnished satisfactory plans to Greene, an officer of the defendant, for a dwelling house addition, he was not a qualified architect or engineer. These facts were known to the defendant. The defendant also knew that Blount would need professional help in drawing the plans. It was agreed between Blount and the defendant that the total cost for the plans and for Blount's supervision of the construction would be $1800. The cost of the addition was estimated at $60,000.

Blount drew some rough sketches of the proposed building and submitted them on behalf of the defendant to the Hartford building inspection department for the purpose of obtaining a building permit. These sketches were rejected as not acceptable for that purpose under state law; see General Statutes § 20-298 (h); because a building of the proposed size required plans drawn by a registered architect or other professionally qualified person as defined by pertinent statutes. Following this rejection, on April 9, Blount took his sketches to the plaintiffs, who were licensed structural engineers. He represented himself as the designer of the building and as agent for the defendant. The defendant knew that Blount had submitted his sketches, bearing the defendant's name, to the plaintiffs and had requested their services. It allowed Blount to continue to use the plaintiffs' services. It was the plaintiffs' understanding with Blount that they were to deliver to him on behalf of the defendant complete structural drawings and would receive $200 for them from money Blount was to obtain from the defendant. On April 13, the plaintiffs delivered their structural plans to Blount and were paid $50 out of a sum of $300 received from the defendant by Blount.

The plans submitted did not meet the requirements of the building inspection department because they were drawn without the benefit of a plot plan and the proposed building was too large for the lot. Blount discussed the matter with the defendant and was instructed to get a more complete set of plans which would include architectural, electrical, plumbing and heating details. The defendant, at its own expense, obtained a plot plan to aid in drafting the building plans. A second set of plans was then drafted by the plaintiffs, who, at the request and with the knowledge of Blount, engaged the services of Butts, an architectural designer, and Silkowski, a qualified electrical engineer, both of whom completed their portions of the plans. They were to receive $500 and $120, respectively, for their work and looked to the plaintiffs for payment. The plaintiffs were unable to arrange for the heating and plumbing details. The second set of plans was delivered to Blount on June 24, 1960. Blount, at the instruction of the defendant, had a number of blueprints made of these plans at a total cost of $179.60, which he paid out of the $300 received from the defendant for the initial expenses for the plans. Two sets of the plans were submitted to the building inspection department and, with minor changes, were deemed acceptable by the department for the issuance of a building permit. Blount was informed of the amount of fees to be paid. The defendant made no application for a building permit, nor did it pay the requisite fees.

Two sets of the plans were given by Blount to the defendant. One set was submitted by the defendant to the G & N Construction Company for an estimate of building costs, and the other to the Society for Savings for the purpose of obtaining a mortgage loan. The construction company was unable to make a firm estimate because of the absence of plumbing

and heating plans. The bank gave an oral commitment of $50,000 conditioned on the plans' being completed. Some time later, the defendant, unable to obtain satisfactory financing, informed Blount that it had abandoned the project. Thereupon, Blount stopped working on the building plans and did not arrange for the completion of the plumbing and heating details. At no time had there been any personal communication between the plaintiffs and the defendant. The defendant, however, knew that the plaintiffs were working on the plans for the building, having examined the first set of drawings soon after completion. These drawings showed that the plaintiffs had prepared them.

The court concluded that, in engaging the services of the plaintiffs, Blount had authority as agent to commit the defendant and acted within the scope of his authority; that the defendant was aware of the commitments which were being made on its behalf; that the plaintiffs were entitled to recover $770 on their complaint; that Blount was entitled to recover $50 on his counterclaim against the defendant; and that the defendant, on its counterclaim against Blount, was entitled to recover a balance of $70.40, being the unexpended portion of the $300 advanced by it to Blount.

In its assignment of errors the defendant has made a wholesale attack on the finding, alleging that thirteen paragraphs were found "without supporting evidence" and that the court had failed to add to the finding thirteen paragraphs contained in the motion to correct. "In effect, the defendants by the wholesale manner in which they allege error and by the arguments advanced in their brief seek to have this court retry the issues. That is not our function." *Franks* v. *Lockwood,* 146 Conn. 273, 275. We have examined the evidence and, except to the

extent of the corrections and additions we have made, as reflected in the facts summarized above, the finding as corrected by the trial court must stand.

The defendant claims error in that the trial court in its correction of the finding included subordinate findings of fact which did not appear in the original finding or in the motions to correct filed by the defendant and by the appellees. This the court had the power to do. Our rules provide that upon consideration of a motion to correct the court is required and authorized to "file corrections of such paragraphs as it finds incorrect or of doubtful meaning, or make additional findings of other facts which it finds proven." Cir. Ct. Rule 7.25.1.

The principal attack of the defendant is directed toward the conclusions of the court that Blount in his dealings with the plaintiffs was the agent of the defendant acting within the scope of his authority, and that the defendant was liable for the commitments Blount made. There is no dispute as to the fact that services were rendered and materials furnished by the various parties at Blount's request or as to the reasonable value thereof. The defendant's argument is finally narrowed to the claim that Blount, in what he did, was acting as an independent contractor and not as the defendant's agent.

"An agency is defined as 'a contract, either express or implied, by which one of the parties confides to the other the management of some business, to be transacted in his name, or on his account, by which the other assumes to do the business, and to render an account of it.' 2 Kent, Comm., p. 612." *Kurtz* v. *Farrington,* 104 Conn. 257, 268. "With respect to third persons, an agency may arise by necessity, from acts and appearances which lead others to believe that such a relation has been created, i.e.,

by estoppel; or from operation of law." 2 Am. Jur. 24, Agency, § 21.

The distinction generally made between an agent and an independent contractor, in their relations with the principal or owner and their liabilities to third parties, is that the principal exercises some degree of control over the agent in the accomplishment of the object of the agency, whereas an independent contractor represents the will of the owner only as to the result of the work and not as to the means by which it is to be accomplished. *Patent Scaffolding Co.* v. *Roosevelt Apartments, Inc.,* 171 Wash. 507, 510; *Scales* v. *First State Bank,* 88 Ore. 490, 499. It has been held that where the facts presented are as consistent with the theory of agency as with that of independent contractor, the burden is only upon the one asserting the independency of the contractor to show the true relation of the parties. *Patent Scaffolding Co.* v. *Roosevelt Apartments, Inc.,* supra.

The defendant insists in its brief and argument that Blount was engaged as an architect because he was an architectural designer and that to the extent of the work accomplished he was an independent contractor. The rule of law it claims as applicable is that an architect, while engaged in the preparation of plans, is an independent contractor, but that after completion of the plans and the beginning of the construction of the project, his act of supervision is in the role of agent working for the principal, his employer. *Montgomery* v. *Levy,* 406 Pa. 547; *Manton* v. *H. L. Stevens & Co.,* 170 Iowa 495. This reasoning plainly ignores the fact of statutory disability which prevented Blount from acting as an architect. Apparently, the argument is based on the ruling in *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 8, that the statutes

do not prohibit a designer from doing the work of an architect provided he did not practice under the title of "architect." That case arose before the enactment in 1953 of what is now chapter 390 of the General Statutes.

Section 20-290, in chapter 390, provides in part as follows: "In order to safeguard life, health and property, no person shall practice architecture in this state . . . unless such person has secured a certificate of registration as provided in this chapter." Section 20-288 defines the practice of architecture as "the rendering or offering to render of service to clients by consultation, investigation, evaluations, preliminary studies, plans, specifications and coordination of structural factors concerning the aesthetic or structural design and supervision of construction of buildings or any other service in connection with the designing or supervision of construction of buildings located within the boundaries of this state, regardless of whether such persons are performing one or all of these duties or whether they are performing them in person or as the directing head of an office or organization performing them." Under § 20-298, certain activities are exempted from the operation of chapter 390, but none of these exemptions would be applicable to relieve Blount from the requirements of that chapter. Section 20-297 provides for substantial penalties for the violation of any provision of chapter 390.

Blount was not a registered architect, could not practice as an architect and did not pretend to act in that capacity. If he had done so he would not only have subjected himself to a criminal penalty but his contract with the defendant would have been illegal, void as against public policy and unenforceable. *Douglas* v. *Smulski,* 20 Conn. Sup. 236, 239; *Nathan* v. *United Jewish Center of Danbury, Inc.,*

20 Conn. Sup. 183, 188. Both the defendant and Blount were fully aware of the latter's incapacity to act as architect, and it cannot be assumed, from the facts found, that they intended to commit an unlawful act in contracting for Blount's services as an architect. The facts found, for sounder reasons and on firmer ground, support the conclusion of agency.

If we assume, without deciding, that the statutory disability did not apply as fully to the defendant, as owner, as it did to Blount as the supposed architect, then Blount could, as agent, do for the defendant whatever the defendant could do for itself. See, for example, *DiSilvestri* v. *Golden Crest Motel Corporation*, 148 Conn. 121, 123, 124. Presumably, the defendant, as owner, instead of employing an architect could deal individually with those whose special professional skills were needed in order to comply with the statutes and ordinances pertaining to the erection of the proposed building. This task, the court has found, it delegated to Blount. At the very outset, when Blount's sketches were rejected by the building inspection department as not meeting the legal requirements and he made known that fact to the defendant, the latter had the choice of discontinuing its operations through Blount and engaging the services of a registered architect; or of selecting qualified individuals to perform the necessary architectural and engineering services; or of having Blount make the necessary arrangements for such professional services as the defendant's agent. It adopted the latter course and, after having received the benefit of the work of the plaintiffs and those engaged by them, it seeks to disavow the agency. This it cannot do. "It is stated to be a well established rule, that where a man stands by, knowingly, and suffers another person to do acts in his name, without any opposition, or objection, he is presumed to have given an authority

to do those acts. [Story on Agen. 82-3.]" *Lee's Administrators* v. *Fontaine & Freeman,* 10 Ala. 755, 770.

The defendant further claims, in effect, that, as to the plaintiffs, Blount was the principal; that there was no disclosure to the plaintiffs of the defendant's identity; and that the liability, if any, rests solely on Blount. " 'It is the duty of the agent, if he would avoid personal liability on a contract entered into by him on behalf of his principal, to disclose not only the fact that he is acting in a representative capacity, but also the identity of his principal, as the person dealt with is not bound to inquire whether or not the agent is acting as such for another.' . . . If he would avoid personal liability, the duty is on the agent to disclose his principal and not on the party with whom he deals to discover him." *Frederick Raff Co.* v. *Goeben,* 116 Conn. 83, 85, quoted in *Diamond Match Co.* v. *Crute,* 145 Conn. 277, 279. The court found on substantial evidence that there was such disclosure. The fact that the completed drawings carried the name of the owner as "Greene Associates," in the face of other undisputed evidence as to identity of the owner and the precise location of the property, is of no material significance. " 'An agent, by making a contract only on behalf of a competent disclosed or partially disclosed principal whom he has the power so to bind, does not thereby become liable for its nonperformance.' Restatement, 2 Agency, § 328." *Whitlock's, Inc.* v. *Manley,* 123 Conn. 434, 437.

The remaining assignment of error requiring consideration relates to the court's conclusions allowing recovery by the plaintiffs of the amounts allocated to Butts and Silkowski. No question was raised with regard to the adequacy, accuracy, or professional quality of their work or the reasonable-

ness of the amount charged for the services rendered. Both Butts and Silkowski looked to the plaintiffs for payment from money the plaintiffs were to receive from the defendant through Blount. It is no concern of the defendant what the agreement regarding the method of payment was among Butts, Silkowski, and the plaintiffs, so long as the defendant was not compelled to answer twice. It is of no help to the defendant in its effort to avoid payment of the amounts due to Butts and Silkowski that the plaintiffs must pay them out of the amount they are entitled to recover. *Bachman* v. *Fortuna,* 145 Conn. 191, 195. Furthermore, it cannot be said with any degree of certainty that Butts and Silkowski had any direct cause of action against the defendant. If they were subagents of the plaintiffs, as apparently they were, their only recourse would be against the plaintiffs. *McKnight* v. *Peoples-Pittsburgh Trust Co.,* 360 Pa. 290.

We cannot overlook the objectionably incorrect procedure which was followed by the parties in their pleadings and which it was beyond the power of the trial court to correct or of this court to consider as error. After Greene-Monroe Corporation had been cited in as a defendant, the plaintiffs filed an amended complaint. To this both defendants filed their answers. Next followed motions for disclosure and answers to the interrogatories. Each of the defendants then filed a "cross complaint" against the other, seeking recovery each from the other on causes of action unrelated to the plaintiffs' complaint. Upon motion duly made, each "cross complaint" would have been stricken. *Puleo* v. *Goldberg,* 129 Conn. 34, 37. The trial court noted this irregularity but had no choice except to acquiesce as best it could in the course adopted and pursued by the parties. From the nature of the judgment rendered, affirmatively on the complaint and on each

of the "cross complaints," the trial court acted in a manner analogous to that of adjusting accounts. The solution was in accord with what the parties expected and served to avoid a multiplicity of action.

There is no error.

Only one bill of costs will be taxed, and it shall be in favor of the plaintiffs against the defendant Greene-Monroe Corporation.

In this opinion DEARINGTON and LEVINE, Js., concurred.

### MEMORANDUM ON PETITION FOR REARGUMENT

PER CURIAM. The appeal in this case was decided on August 28, 1963. The petition for rehearing is opposed on the ground that once a decision has been reached in the Appellate Division there can be no right to further review except to the Supreme Court of Errors. General Statutes § 51-265. It also appears that § 441 of the 1951 Practice Book, relating to motions to reargue, is not among the rules of the Supreme Court of Errors made applicable, by reference, to appeals to this court. Cir. Ct. Rule 7.51.1. Although under § 51-265 of the General Statutes Circuit Court appeals are of an intermediate nature, nevertheless further appeal to the Supreme Court of Errors is not a matter of right. It would seem, therefore, that the Appellate Division is not precluded from reexamining its own decisions, within a reasonable time after their rendition, if it appears that otherwise injustice may result because of oversight in a material issue of fact or law. It has been held on appeal to our Supreme Court that, on its own motion, the court may direct reargument where a pertinent statute was overlooked, during trial and on appeal, if the error is apparent on the record. See, for example, *Columbus Industrial Bank* v. *Miller*, 125 Conn. 313,

315; *Adley Express Co.* v. *Darien,* 125 Conn. 501, 504; *Waterbury Lumber & Coal Co.* v. *Coogan,* 73 Conn. 519; Maltbie, Conn. App. Proc. § 320. For the distinction between a writ of error coram nobis and a motion to reargue, see *Greenberg* v. *Harrison,* 143 Conn. 731, 732.

In our decision in this case, we took into consideration the effect of certain statutes on the claimed relationship of the parties. These statutes, though pertinent, were apparently overlooked on trial and at the original hearing. We have permitted the parties to argue in order to afford them the opportunity of presenting such additional arguments as they might have in view of the statutes brought to their attention. It is unnecessary to consider the petition so far as it refers to minor corrections which do not alter the substance of the decision. Each opinion is subject to alteration and addition by the judges until printed in the Connecticut Circuit Court Reports.

The petition is denied.

KOSICKI, DEARINGTON and LEVINE, Js., participated in this decision.