**HAMMERMILL PAPER COMPANY, Plaintiff,**

v.

**C.T. MAIN CONSTRUCTION, INC., the C.T. Main Corporation, Riley Stoker Corp., and Ashland Technology Company, Defendants.**

Civ. A. 86–17 Erie.

United States District Court, W.D. Pennsylvania.

June 12, 1987.

John M. Wolford, McDonald, Illig, Jones & Britton, Erie, Pa., for plaintiff.

Quinn, Gent, Buseck & Leemhuis, Erie, Pa., and Kenneth M. Cushman, Paper Hamilton & Scheetz, Philadelphia, Pa., for defendant C.T. Main Const., Inc.

W. Patrick Delaney, Marsh, Spaeder, Baur, Spaeder and Schaaf, Erie, Pa., for defendant Riley Stoker Corp. and Ashland Technology Co.

## OPINION

GERALD J. WEBER, District Judge.

Plaintiff, Hammermill Paper Co. contracted with C.T. Main Construction Co. on

September 9, 1983 for the construction of a "co-generation power plant" at its Lockhaven, PA mill. The contract was for the installation of new equipment and the upgrading of existing Boilers Nos. 1 and No. 2 for production of steam at higher pressure and temperatures.

C.T. Main Construction, Inc. subcontracted the upgrading of the boiler to the original manufacturer of the boilers, Riley Stoker, Inc. This work included, as pertinent to this case, the alteration of the superheater elements of the boilers. These are steel tubes located inside the boiler which are exposed to the gas and fire of the boiler and served to superheat the steam passing through them. The specifications called for a design to allow a temperature of 770° at a pressure of 650 p.s.i.g. According to the Complaint, the project was completed and went into production in October 1984.

In May of 1985, Hammermill began to experience difficulties from ruptures of the superheater tubes in Boiler No. 2. Seven of the tubes in Boiler No. 2 ruptured in the next seven months, and had to be repaired. Boiler No. 1 also required repairs. Plaintiff claims damages, both direct for replacement, and consequential including production losses, additional production costs, loss of revenue, and legal and engineering costs.

Plaintiff has sued on causes of action of strict tort liability, negligence and breach of implied warranties.

Plaintiff sued C.T. Main Construction, Inc., the contractor; The C.T. Main Corporation, its parent company; Riley Stoker Corp. and its parent company, Ashland Technology, Inc., now called ATEC, Inc.

Defendants Riley Stoker Corp. and C.T. Main Construction, Inc. have moved for Judgment on the Pleadings, or in the alternative, for Partial Summary judgment. Because evidentiary materials have been filed in support of the motion, the court will determine the matter under F.R.Civ.P. 56.

Movants allege that this case is concerned solely with economic loss for which no cause of action exists under theories of negligence or strict liability because no injuries to persons or property resulted from the failure of the boiler. Defendants also move for partial summary on the limitation of warranties and recoverable damages for breach of warranty if a breach is established.

We will consider each part of the motion separately. The matter has been fully briefed and supported by evidentiary material. There appears to be no genuine issue of material fact and the matter is ripe for summary judgment.

### The Tort Claims

This is a diversity action and Pennsylvania law applies to the tort claims.

Since the adoption of the rule of strict liability imposed on manufacturers and sellers by Sec. 402A Restatement (2nd) of Torts by the Pennsylvania Supreme Court in *Webb v. Zern,* 422 Pa. 424, 220 A.2d 853 (1966), the rule has undergone judicial construction to define the nature of the harm caused by the defective product. A distinction was drawn between those cases resulting in physical injury to persons and damage to other property as distinguished from economic loss from the deterioration of the product itself. The states have divided in their interpretation of the Restatement Rule as applied to the property itself.

In New Jersey, it was held that the unexpected deterioration of carpeting gave rise to strict liability, *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1935).

In California, a landmark case established a rule that has been followed in a majority of states, that economic loss alone caused by the deterioration or malfunction of the product itself, without injury to persons or damage to other property would not support a cause of action for strict liability. *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

This question has spawned lively judicial and academic debate about the proper scope of § 402A of the Restatement (Second) of Torts as opposed to the provisions of the Uniform Commercial Code.

Thankfully, we need not predict how Pennsylvania courts would decide this issue since the Third Circuit has recently undertaken this task and we need merely follow their lead. *See Aloe Coal Company v. Clark Equipment Company*, 816 F.2d 110 (3d Cir.1987). In the *Aloe Coal* case, the Circuit Court rejected its earlier position on this issue enunciated in *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165 (3d Cir.1981), holding that Pennsylvania courts would adopt as state law the Supreme Court's reasoning in *East River Steamship Corp. v. Transamerica Delaval*, — U.S. —, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986). In so deciding, the Third Circuit concluded that the fire damage to a tractor shovel in the *Aloe Coal* case was not recoverable under Pennsylvania law on a theory of negligence, and that the buyer's remedies were limited to those available under the law of warranty. In the case at hand, as in the *Aloe Coal* case, the plaintiff seeks neither damages for personal injury nor for property damage other than loss of the defective superheater tubes. No other component of the boiler was damaged. *See* Deposition of Daniel N. Murry, p. 40. The threatened risk of harm to personnel and the fact, accepted for purposes of this motion, that failure of the super heater tubes results in failure of the boiler does not change our conclusion that the plaintiff's loss is purely economic. Under the current Third Circuit decision in *Aloe Coal*, the plaintiff is limited to its warranty remedies.

### The Warranty Claim

The movants argue that limitations and disclaimers in the pertinent contracts in this case preclude Hammermill from basing this action on breach of implied warranties, and that they restrict the damages claimed. Plaintiff responds that there are no limitations in any warranties on which it relies, and that limitations clauses in various contract documents advanced by defendants are not applicable to it because it was not a party to these documents.

### I. Implied Warranties Claim

■ Plaintiff's complaint does not rely on any express warranty language which has been breached but seeks to impose liability on defendants based on the implied warranties of fitness and/or merchantability. Complaint, para. 16. Both defendants strongly argue that the limitation of warranties language in Riley Stoker's subcontract with C.T. Main Construction clearly and conspicuously excludes such warranties, and precludes Hammermill from bringing an action based on breach of implied warranties. Paragraph 11(f) of the Riley Stoker Proposal (*See* Appendix, P. 18) indicates in bold print that:

**THE FOREGOING WARRANTY IS EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES WHETHER WRITTEN, ORAL OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR PURPOSE.**

We find that this language was conspicuously set forth and that it is sufficiently explicit to meet the requirements of 13 Pa.C.S.A. § 2316(b) which permits the exclusion of implied warranties.

Defendant contends that plaintiff was given a copy of the Riley Stoker proposal before an agreement was reached and that Hammermill should now be bound by the limitation of warranties contained therein, since the provision is neither unconscionable, nor does the express warranty to repair or replace fail of its essential purpose. Hammermill concedes that it had a copy of the Riley Stoker proposal with the limitations provision contained therein, but claims that it is not bound by any provision in a contract to which it was not a party.

We find that Hammermill is a commercial buyer with the ability to set restrictions as to who the subcontractor would be as well as to conditions that may be contained in the subcontracts themselves. *See* Hammermill Contract General Conditions, Art. VI, Appendix to Defendant's Motion, P. 119. Hammermill had actually received the Riley Stoker provision at a time when it could have rejected Riley Stoker as its subcontractor if it so wished. There was no

element of surprise present in this situation where a commercial buyer accepted a subcontractor whose proposal, conspicuously limiting warranties and remedies, was in the hands of the commercial buyer, and where such limitation of warranty provisions are frequently found in such supplier subcontracts. *See Tennessee Carolina Transp., Inc. v. Strick Corp.*, 283 N.C. 423, 196 S.E.2d 711 (1973), *later app.*, 286 N.C. 235, 210 S.E.2d 181 (1974) (applying Pennsylvania law; lack of surprise and buyer with equal bargaining power prior to entering sales contract); *Cyclops Corp. v. Home Insurance Co.*, 389 F.Supp. 476 (W.D.Pa. 1975), *aff'd.* 523 F.2d 1050 (3d Cir.1975); 73 A.L. R.3d 248, 274, § 6. Privity of contract is no longer necessary in an assumpsit action brought in Pennsylvania by a purchaser against a remote manufacturer for breach of implied warranty. *Kassab v. Central Soya*, 246 A.2d 848, 432 Pa. 217 (1968). Hammermill relies on this in bringing its action. However, Hammermill then claims that it cannot be subjected to an otherwise valid exclusion of these implied warranties because it was not a party to the contract between C.T. Main Construction and Riley Stoker. This argument, if accepted, creates a lack of symmetry whereby the commercial supplier could not limit its liability effectively. We do not believe that this is the result which the law intends in a situation such as this where the loss is strictly economic, the commercial buyer had notice of the limitation of warranties, the buyer had at least equal bargaining power and could have rejected the subcontractor after receiving such notice, but, instead, the commercial buyer approved the use of this subcontractor with knowledge of the subcontractor's conditions limiting warranties. For these reasons we will grant defendants' motions for summary judgment on plaintiffs breach of implied warranty claim.

## II. Express Warranty

Plaintiff may proceed only on breach of the express warranty provided by Riley Stoker which provides for repair and/or replacement on a straight time basis of any parts supplied, which are found to be defective in design, workmanship or material, within one year of initial operation, and which excludes any liability for incidental or consequential damages. *See* Riley Stoker Proposal, Para. 11, Appendix, P. 17. We find that the limitation of damages is also effective against Hammermill. Claims for incidental and consequential damages will be excluded. *See K.C., Inc. v. Westinghouse Electric Corporation*, 437 Pa. 303, 263 A.2d 390 (1970).

## Claim for Boiler No. 1

Defendant argues that plaintiff has not stated a cause of action for repairs to Boiler No. 1 given the limitation of warranties language and the fact that no failures had occurred as of the time of filing of these motions and briefs. (June, 1986) Plaintiff responds in opposition with the affidavit of John D. Ely indicating that Boiler No. 1 of the Lock Haven plant was shut down and serviced over the July 4, 1986 holiday weekend and that an analysis of the super heater tubes was underway to determine damages. Plaintiff asked for an additional thirty days to submit test results. No further submissions have been received from plaintiff despite the passage of many months. Plaintiff has not come forth with any information which would show that Boiler No. 1 suffered any damage or needed any repairs. For this reason, we find that plaintiff has failed to show the existence of any material issue of fact, and we will dismiss its claim for damages for Boiler No. 1.

## Claims Against C.T. Main Corporation

C.T. Main Corporation has moved for partial summary judgment on the grounds that it had no contractual relationship with plaintiff, and that plaintiff was not a third party beneficiary of any contract between C.T. Main Corporation and C.T. Main Construction. Plaintiff argues that this motion is premature due to the limited discovery that has taken place, and due to plaintiff's uncertainty as to the relationship between these defendants. However, plaintiff has been given the opportunity to seek any discovery necessary to establish the validity of its claim against C.T. Main Corporation in opposition to

these defendants' motions and has not provided us with any information in support of its position other than allegations that C.T. Main Construction, Inc. is a subsidiary of C.T. Main Corporation, and that Main Construction "performed said contract with participation from its parent, C.T. Main Corporation." Complaint, para. 12. We find this insufficient to withstand a motion for summary judgment as plaintiff has failed to establish that it has enforceable contract rights. *See* 13 Pa.C.S.A. § 1201; *R.M. Shoemaker Co. v. Southeastern Pennsylvania Economic Development Corp.,* 275 Pa. Super. 594, 419 A.2d 60, 63 (1980). The Supreme Court has recently held that the plain language of F.R.Civ.P. 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corporation v. Catrett,* — U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). For these reasons we will grant the motion for summary judgment filed on behalf of C.T. Main Corporation and will dismiss all further proceedings as to this defendant.

An appropriate order will issue.

### ORDER

NOW, this 12 day of June, 1987 in accordance with the accompanying opinion, IT IS ORDERED that:

1. C.T. Main Corporation's motion for summary judgment is GRANTED and all further proceedings are DISMISSED as to this defendant;

2. Defendant's motions for summary judgment are GRANTED in that plaintiff's tort claims and breach of implied warranty claims are DISMISSED. Plaintiff may proceed as to the breach of express warranty claim;

3. Claims for incidental and consequential damages are DISMISSED;

4. Claims for Boiler No. 1 are DISMISSED.