HIGGINS ERECTORS &
HAULERS, INC.,

v.

E.E. AUSTIN & SON, INC.,

v.

HAMMERMILL PAPER COMPANY,

v.

SANDWELL INTERNATIONAL, INC.;
Swan Wooster Engineering, Inc.; and
their successors, Schuchart & Associates Inc.; Sandwell Swan Wooster, Inc.
(a Canadian corporation); and Sandwell Swan Wooster, Inc. (a Georgia corporation),

v.

J.C. WILLIAMSON COMPANY.

HIGGINS ERECTORS & HAULERS,

v.

HAMMERMILL PAPERS GROUP, A
DIVISION OF HAMMERMILL
PAPER COMPANY,

v.

E.E. AUSTIN & SON, INC.; Sandwell International, Inc.; and their successors,
Schuchart & Associates, Inc.; Sandwell
Swan Wooster, Inc. (a Canadian corporation); and Sandwell Swan Wooster,
Inc. (a Georgia corporation).

Civ. A. Nos. 87–237 Erie, 88–127 Erie.

United States District Court,
W.D. Pennsylvania.

June 5, 1989.

Barry L. Radlin, Duke Holzman Yaeger & Radlin, Buffalo, N.Y., for Higgins.

Wm. Patrick Delaney, Marsh Spaeder Baur Spaeder & Schaaf, Erie, Pa., for E.E. Austin.

Roger H. Taft, Dale Huntley, MacDonald Illig Jones & Britton, Erie, Pa., for Hammermill.

Kenneth D. Chestek, Murphy Taylor and Adams, Erie, Pa., for Sandwell.

Joseph Martone, Erie, Pa., and James C. Kletter, Springer, Bush & Perry, Pittsburgh, Pa., for J.C. Williamson.

OPINION

GERALD J. WEBER, District Judge.

We are herein confronted with a classic example of what is commonly referred to as "passing the buck." The particular "buck" with which we are concerned has been passed no less than seven times. The opportunity has now come for us to step in and determine where the buck stops.

I. *Facts*

The basic facts upon which these cases arise are fairly simple, and begin in May, 1984. Hammermill Paper Company selected E.E. Austin & Sons, Inc. as the prime contractor for some construction work in Erie, Pennsylvania. E.E. Austin in turn subcontracted some of the work out to Higgins Erectors & Haulers, Inc. Pursuant to the terms of the subcontract, Higgins was to complete performance of its work prior to November, 1984. This work, however, was not completed until April 2, 1985.

II. *Procedural History*

A. Higgins v. E.E. Austin—C.A. 87–237E

Unfortunately, the procedural history of this case is not as simple as its basic facts. Higgins initiated the chain of buck passing by filing a complaint against E.E. Austin. The complaint alleges that E.E. Austin breached the subcontract through a number of acts and omissions which delayed the completion of construction. These include the failure to timely furnish necessary equipment, machinery and materials, and the failure to provide Higgins timely access to certain areas of the project. As a result of E.E. Austin's acts and omissions, Higgins claims to have sustained damages in the amount of $216,105.46. These damages primarily consist of added costs due to the extended construction period.

Refusing to accept responsibility for the delayed construction, E.E. Austin opted to pass the buck in two separate directions. First, it filed a counterclaim alleging that Higgins breached the subcontract thereby causing the delay in construction. The alleged breach of the subcontract included undermanning of certain aspects, lack of timeliness in completing work activities, inefficiencies in accounting, and poor work quality. In the counterclaim, E.E. Austin alleges damages of $75,052.00 caused by the delay.

The second manner in which E.E. Austin attempts to pass the buck is through a third party complaint against Hammermill, based upon a claimed breach of the prime contract. There, E.E. Austin alleges, inter alia, that the delays were caused by Hammermill's failure to: provide equipment and machinery on a timely basis; provide access to the premises; and timely provide drawings and specifications. Higgins thereby seeks contribution and/or indemnity from E.E. Austin.

Not wishing to be outdone, Hammermill filed a counterclaim against both Higgins and E.E. Austin alleging that their acts and omissions caused Hammermill to suffer $264,600.00 in damages, due to the resultant delay in starting up its new pulp producing system. In addition, Hammermill

claims $6,300.00 in damages against Higgins, based upon an alleged breach of an entirely separate contract "to move a 'dearator tank' into service."

In response to Hammermill's counterclaim against it, E.E. Austin deemed it necessary to jump on the bandwagon for a second ride by filing a crossclaim against Higgins for contribution and/or indemnity should E.E. Austin be found liable for any damages claimed by Hammermill.

Hammermill, apparently concerned that not enough people had been invited to the party, also prepared an invitation list of its own joining the following as fourth party defendants: Sandwell International, Inc.; Swan Wooster Engineering, Inc.; and their successors, Schuchart & Associates, Inc.; Sandwell Swan Wooster, Inc. (a Canadian corporation); and Sandwell Swan Wooster, Inc. (a Georgia corporation). We will not attempt to embark upon an explanation of the interrelationships of these corporations. We will instead treat them as one entity which we will refer to as "Sandwell." Sandwell was retained by Hammermill to perform engineering services relative to the project in which E.E. Austin was the prime contractor. The basis of the fourth party complaint is the allegation that Sandwell's delay in providing Hammermill with drawings and specifications is the reason for Hammermill's delay in supplying them to E.E. Austin.

Finally, our cast of characters becomes complete with the filing of a fifth party complaint by Sandwell against J.C. Williamson Company. Williamson had a separate contract with Hammermill which included providing design drawings and certain conveyor belts. Sandwell alleges that Williamson's negligent delays in providing these to Hammermill led to Sandwell's own delays in providing drawings and specifications for the foundation supports for the Williamson conveyors.

### B. Higgins v. Hammermill—C.A. 87–127E

Apparently believing that the waters had yet to be muddied enough by the ongoing proceedings in its action against E.E. Austin, Higgins also initiated a separate cause of action directly against Hammermill. In its complaint, Higgins places the blame for the delayed construction upon Hammermill. Because, however, Higgins had no direct contractual relationship with Hammermill on the project, Higgins has pled a cause of action for unjust enrichment. Hammermill responded by filing a counterclaim identical to the one filed in C.A. 87–237E. It also filed a third party complaint against E.E. Austin and the Sandwell group, alleging the same causes of action against them as in C.A. 87–237E. Upon the motion of Hammermill, this action was consolidated with 87–237E, at that number.

### III. *Discussion*

Presently, pending before us in these consolidated actions are several motions to dismiss. Having sorted through the intricate web of claims, counterclaims and crossclaims, and resolved the confusing question of "who's on first?" we will now address these motions.

### A. Motion to Dismiss Fifth Party Complaint Against J.C. Williamson Company—C.A. 88–237E

■ J.C. Williamson Company has moved to dismiss the fifth party complaint against it for failure to state a claim. In response to Williamson's motion, Sandwell provides the following clarification of the basis of its claim for indemnity and/or contribution:

Sandwell's stated indemnity cause of action against Williamson is not direct, but rather is secondary or derivative. While Sandwell readily admits that there is no contractual indemnity agreement between Sandwell and Williamson, if Sandwell is found liable, its liability is secondary to that of Williamson. *See, e.g., Eckrich v. DiNardo*, 283 Pa.Super. 84, 423 A.2d 727 (1980).

With regard to contribution, Sandwell recognizes that this cause of action only arises between joint tortfeasors. In *Lasprogata v. Qualls*, 263 Pa.Super. 174, 397 A.2d 803 (1979), the court defined tortfeasors by noting that "the parties must either act together in committing the wrong, or their acts, if independent of each other, must unite in causing a

single injury." *Id.* at 179 n. 4, 397 A.2d 803, 805 n. 4. In the instant case, it may very well be proven the Sandwell's alleged delays and Williamson's delays jointly contributed to the damages complained of. Under those circumstances, contribution would be appropriate.

We find these conclusionary statements to be grossly inadequate and completely unsupportable.

Without question, where a defendant's liability is secondary to another party, he may join that party for indemnity. Sandwell, however, makes a quantum leap from that principle of law to the conclusion that its liability is secondary to Williamson's. In making that leap, it relies upon *Eckrich v. DiNardo*, 283 Pa.Super. 84, 423 A.2d 727 (1980). We find that reliance misplaced. As the court in *Eckrich* noted:

> Secondary as distinguished from primary liability rests upon fault that is imputed or constructive only, being based on some legal obligation between the parties or arising from some positive rule of statutory or common law ...

In *Eckrich*, the secondary liability arose out of a principal and agent relationship. Herein, we have no such legal obligation between Sandwell and Williamson, nor do we have any other positive rule of statutory or common law. As former Pennsylvania Chief Justice George W. Maxey once said: "No man has any cause of action against another unless that other is obligated to him." *Spires v. Hanover Fire Ins. Co.*, 364 Pa. 52, 70 A.2d 828, 834 (1950) (Maxey, C.J., concurring). Sandwell's alleged liability arises solely out of its contract with Hammermill and in no way is it secondary to the wholly unrelated alleged liability of Williamson which is based upon an entirely separate contract.

■ Similarly, Sandwell's claim for contribution from Williamson as a joint tortfeasor, takes a quantum leap. Simply because "it may well be proven that Sandwell's alleged delays and Williamson's delays jointly contributed to the damages complained of," does not make Sandwell and Williamson "joint tortfeasors." Hammermill's claim against Sandwell is based solely upon a contract between the two. No cause of action sounding in tort is pled against Sandwell. Furthermore, while Sandwell's complaint against Williamson is couched in negligence terms, it is actually based upon an alleged breach by Williamson of its contract with Hammermill. Sandwell's attempt to characterize its claim against Williamson as arising out of Williamson's negligence is a thinly veiled contrivance which deserves no further attention. *See, Mattia v. Sears, Roebuck & Co.*, 366 Pa.Super. 504, 531 A.2d 789 (1987) and *Manor Junior College v. Kaller's Inc.*, 352 Pa.Super. 310, 507 A.2d 1245 (1986).

B.  Hammermill Counterclaims Against Higgins—RE: Dearator Tank

■ As previously noted, Hammermill filed identical counterclaims against Higgins in both of these consolidated actions. These counterclaims are actually two-fold. Paragraphs one through three, which we will address later, relate to the Hammermill/E.E. Austin/Higgins project. Paragraph four claims damages of $6,300.00 against Higgins, based upon an alleged breach of an entirely separate contract "to move a 'dearator tank' into service." Higgins has moved in both actions to dismiss this paragraph of the counterclaim. In its response to the motion to dismiss at C.A. 87–237E, Hammermill concedes that paragraph four of the counterclaim "does not arise from the same transaction or occurrence that is the subject of plaintiff's [Higgins] claim against defendant [E.E. Austin]." *See*, F.R.C.P. 14(a). Hammermill, therefore, "suggests" that we strike paragraph four of the counterclaim at C.A. 87–237E, which we will do.

As to C.A. 88–127E, however, Hammermill has failed to respond to Higgin's motion, despite the fact that these cases had not yet been consolidated at the time. In its motion, Higgins recognizes that the counterclaim in 88–127E, unlike its counterpart at 87–237E, is not subject to dismissal under F.R.C.P. 14(a), which only governs third party practice. Instead, Higgins recognizes that the counterclaim in 88–127E may be considered a permissive counter-

claim under F.R.C.P. 13(b). Higgins nevertheless argues that this counterclaim is subject to dismissal due to the absence of privity between itself and Hammermill.

In support of its motion, Higgins presents the affidavit of Richard C. Higgins, executive vice president of Higgins. In the affidavit, Richard Higgins states that Higgins had no direct contractual relationship with Hammermill concerning the dearator tank. Higgins, it is alleged, merely had a subcontract with Whipple–Allen Construction Co. Whipple–Allen in turn had a contract with Hammermill. Attached with Richard Higgins' affidavit are documents evidencing Higgins' subcontract with Whipple–Allen. Because Hammermill has failed to respond to this motion despite an adequate opportunity to do so, we will grant Higgins' motion, treating it as a motion for summary judgment under F.R.C.P. 12(c).

### C. Hammermill Counterclaims Against Higgins—RE: Hammermill/E.E. Austin/Higgins project

Higgins has also moved in both of these consolidated actions to dismiss the remainder of the Hammermill counterclaim against it (paragraphs 1–3). Higgins maintains that Hammermill has failed to state a claim due to the absence of privity between Higgins and Hammermill. Hammermill has responded by claiming that it is a third party beneficiary of Higgins' contract with E.E. Austin.

■ In its brief, Hammermill states that "Pennsylvania courts have applied two standards to determine what constitutes a third party beneficiary to a contract." That statement is not entirely correct. The Pennsylvania Supreme Court has consistently followed the standard which was clearly established in *Spires v. Hanover Insurance Company*, 364 Pa. 52, 70 A.2d 828 (1950). That court has also, however, created a less restrictive standard for:

> a narrow class of third party beneficiaries ... where the intent to benefit is clear and the promisee (testator) is unable to enforce the contract.

*Guy v. Liederbach*, 501 Pa. 47, 459 A.2d 744 (1983). Hammermill does not point to any special circumstances in the present case to justify application of the less restrictive *Guy* standard, and upon our own careful consideration we find none to exist. See, *Manor Junior College v. Kaller's Inc.*, 352 Pa.Super. 310, 507 A.2d 1245 (1986). We therefore conclude that the appropriate standard to be applied herein is that enunciated in *Spires*.

■ In *Spires* the Pennsylvania Supreme Court held that to be a third party beneficiary entitled to recover on a contract:

> both parties to the contract must so intend and *must indicate that intention in the contract;* in other words, a promisor cannot be held liable to an alleged beneficiary of a contract unless the latter was within his contemplation at the time the contract was entered into and such liability was intentionally assumed by him in his undertaking; the obligation to the third party must be created, and *must affirmatively appear, in the contract itself ...*

*Spires*, 70 A.2d at 830–831 (emphasis added).

Hammermill argues that Higgins' obligation to it affirmatively appears in the following paragraph of a purchase order issued by E.E. Austin to Higgins:

> Terms, conditions, inclusions and exclusions are per the letter and per Hammermill specifications and contract drawings ...

This paragraph, however, does not include any expression by Higgins of any obligation to Hammermill nor any indication by Higgins that Hammermill was an intended beneficiary of the contract. Higgins simply agreed to perform according to Hammermill specifications and drawings for E.E. Austin's benefit. E.E. Austin would in turn have to answer to Hammermill for any deviations from those drawings and specifications. Even were we to agree that the above paragraph created an obligation owed by Higgins to Hammermill, such obligation would only relate to conformity with the specifications and contract drawings. It would create no obligation as to comple-

tion dates. Nowhere has Hammermill presented us with any evidence of any type of completion date agreement between Higgins and E.E. Austin, to which Hammermill can claim to be a third party beneficiary.

Finally, Hammermill argues that the lack of privity does not bar its claim against Higgins. It relies upon our decision in *Hammermill Paper Co. v. C.T. Main Construction,* 662 F.Supp. 816 (W.D.Pa.1987), to support the proposition that privity is not required between plaintiff owner and subcontractor. Hammermill, however, misconstrues our opinion in that case. We, therein, noted that:

> "[p]rivity of contract is no longer necessary in an assumpsit action brought in Pennsylvania by a purchaser against a remote manufacturer for breach of implied warranty. *Kassab v. Central Soya,* [432 Pa. 217] 246 A.2d 848 [1968]."

*Hammermill v. C.T. Main,* 662 F.Supp. at 819.

Nowhere in that opinion is there any indication that privity is no longer necessary for a cause of action as is presented in Hammermill's counterclaim.

### IV. *Conclusion*

For the foregoing reasons, we will enter an order dismissing the fifth party complaint against J.C. Williamson Company, at C.A. 87–237E; and disposing entirely of the Hammermill counterclaims against Higgins at both C.A. 87–237E and 88–127E.

### ORDER

AND NOW, this 5th day of June, 1989, IT IS ORDERED that:

1) Sandwell's fifth party complaint against J.C. Williamson Company at C.A. 87–237E, is DISMISSED;

2) Paragraph four of Hammermill's counterclaim against Higgins at C.A. 87–237E is STRICKEN;

3) As to paragraph four of Hammermill's counterclaim against Higgins at C.A. 88–127E, Summary Judgment is GRANTED in favor of Higgins; and

4) The remainder of Hammermill's counterclaims against Higgins at both 87–237E and 88–127E are DISMISSED.