Mark **RICHARDSON**

v.

**JOHN F. KENNEDY MEMORIAL HOSPITAL; Philadelphia Municipal Workers' District Council 33 Health and Welfare Fund; and Aetna Life Insurance Company.**

Civ. A. No. 92–2899.

United States District Court,
E.D. Pennsylvania.

Oct. 26, 1993.

---

Lanier E. Williams, Philadelphia, PA, for Mark Richardson.

Ronald A. White, Deborah M. Knight, Ronald A. White, P.C., Philadelphia, PA, for John F. Kennedy Memorial Hosp.

Catherine L. Merino, Nancy B.G. Lassen, Stephen P. Ulan, Laurence M. Goodman, Willig, Williams & Davidson, Philadelphia, PA, for American Federation State County and Mun. Employees Dist. Council 33.

Thomas J. Momjian, Vincent V. Carissimi, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Aetna Life Ins. Co.

Nancy B.G. Lassen, Stephen P. Ulan, Willig, Williams & Davidson, Philadelphia, PA, for Philadelphia Mun. Workers Dist. Council 33 Health & Welfare Fund.

MEMORANDUM

PADOVA, District Judge.

## I

### INTRODUCTION

In this case, an insurance consultant asserts breach of contract and civil conspiracy claims against an insurer, hospital, and health and pension fund. The insurer, hospital, and health and pension fund have cross-claimed against each other for contribution and/or indemnification, and the health and pension fund has counter-claimed against the insurance consultant for recoupment. The parties have filed a host of motions to dismiss or for summary judgment.

## II

### FACTS

Plaintiff's original complaint, filed in diversity on May 19, 1992, asserted claims for breach of contract, civil conspiracy, and intentional interference with contractual relations. On May 20, 1992, plaintiff filed his first amended complaint, which only made technical changes to his original pleading. In the latter part of 1992, all defendants filed motions to dismiss plaintiff's first amended complaint. After I ruled on these motions, all of the breach of contract claims and two of the civil conspiracy claims remained. On March 10, 1993, plaintiff filed a motion for leave to file a second amended complaint, which I granted by stipulated Order dated April 30, 1993. On May 3, 1993, plaintiff filed his second amended complaint.

Plaintiff's second amended complaint avers the following facts. Plaintiff, a Florida resi-

dent, is an independent health and life insurance agent and consultant. Defendant Aetna Life Insurance Company ("Aetna") is a Connecticut corporation that, among other things, provides medical and life insurance coverage and related administrative support services to institutional clients. Defendants John F. Kennedy Memorial Hospital ("JFK Hospital") and Philadelphia Municipal Workers' District Council 33 Health and Welfare Fund (the "Fund")[1] sought certain plans of medical and life insurance coverage for their respective employees, members, and their families. Between December 1985 and December 1986, plaintiff entered into an agreement with Aetna (the "Consultation Contract") whereby plaintiff was obligated to (1) help design and develop insurance plans for JFK Hospital and the Fund and (2) act as Aetna's agent in selling such insurance coverage and related administrative services to JFK Hospital and the Fund.[2]

Between January and December 1986, plaintiff sold Aetna's insurance coverage and related administrative services to JFK Hospital and the Fund (JFK Hospital and the Fund are sometimes hereinafter collectively referred to as the "Insureds"). In particular, Aetna entered into separate agreements with the Insureds to (1) underwrite "stop-loss" insurance plans that were designed by plaintiff and (2) provide administrative support services with respect to these insurance plans (respectively, the "Hospital–Aetna Contract" and the "Fund–Aetna Contract" or collectively, the "Insurance Contracts").

By December of 1986, plaintiff had entered into written agreements with the Fund (the "Fund–Richardson Contract")[3] and JFK

1. The American Federation of State and County Municipal Employees, Philadelphia Municipal Workers, District Council 33 (the "Union") was originally named as a defendant. The Fund is an entity that administers the Union's health and welfare plan. Plaintiff's second amended complaint merely substituted the Fund for the Union.

2. In various briefs, plaintiff admits that the Consultation Contract is an oral contract.

3. The written memorandum agreement memorializing the Fund–Richardson Contract was written on plaintiff's stationary, dated December 7, 1986, and signed by plaintiff and Earl Stout, who

was the Union's president, JFK Hospital's president and executive director, and the Fund's chairman of the board of trustees. Earl Stout controlled all three entities during the relevant time periods.

This written memorandum agreement referred to an agreement between plaintiff and the Union. However, plaintiff testified that at the time that he drafted and executed the contract, he considered the Fund and the Union as one entity—the Union. It was only after the pension plan went into effect in mid–1987 that plaintiff understood that these entities were separate. See Richardson Dep. 228–29. Plaintiff's stipulated dismissal

Hospital (the "Hospital–Richardson Contract")[4] (the Fund–Richardson Contract and the Hospital–Richardson Contract are collectively referred to as the "Liaison Contracts"). In the Liaison Contracts, plaintiff agreed to provide on-going administrative services, including serving as a liaison between the Insureds and Aetna with respect to the Insurance Contracts. In exchange for plaintiff's services, JFK Hospital agreed to pay plaintiff on an annual basis $50,000 plus 10 percent of the savings achieved by JFK Hospital from being a self-insurer, as provided for in the plan, and the Fund agreed to pay plaintiff on an annual basis for a minimum of five years 1.8 percent of the expected claims made against the plan. In all of these contracts, plaintiff, the Insureds, and Aetna agreed that plaintiff's compensation for his services would be included in Aetna's overall billing statements to the Insureds, and Aetna would be responsible for distributing the full compensation that each of the Insureds would owe to plaintiff.

Until April 1988, all of these contracts were satisfactorily performed. By letter dated May 25, 1988, however, the Fund notified Aetna that plaintiff was not to be involved in any way with the Fund's accounts with Aetna. JFK Hospital and the Fund subsequently barred plaintiff from continuing to perform services on their behalf, and they ceased paying Aetna the amounts earmarked as plaintiff's compensation. Aetna, however, continued to perform services for the Insureds under their Insurance Contracts, including those services formerly provided by plaintiff (which it performed for additional compensation). Plaintiff alleges that he was never informed by the Insureds of any complaints or criticism concerning any aspect of his performance of services to the Insureds under his contracts with them.

Based upon these factual allegations, plaintiff alleges breach of contract claims against JFK Hospital (Count I), the Fund (Count II), and Aetna (Count III). Plaintiff also asserts claims against JFK Hospital for civilly conspiring with others to infringe upon plaintiff's contractual rights (1) with the Fund (Count IV) and (2) with Aetna (Count XII). The Fund filed a counter-claim against plaintiff for recoupment and a cross-claim against Aetna for contribution and/or indemnification. JFK Hospital filed cross-claims against the Fund and Aetna for contribution and/or indemnification; and Aetna filed cross-claims against the Fund and JFK Hospital for contribution and/or indemnification.

### III

### STANDARD OF REVIEW

■ In determining a motion for summary judgment, I must view all facts in the light most favorable to the party opposing the motion. *See Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir.1981). I am guided by Rule 56(c) of the Federal Rules of Civil Procedure, which provides that summary "judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ An issue is "genuine" if there is sufficient evidence from which a reasonable jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. at 2510. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 2725, at 93–95 (1983)).

■ A party seeking summary judgment always bears the initial responsibility of

---

of the Union and substitution of the Fund in its place in his second amended complaint operates as an admission that he actually performed services on behalf of the Fund, and not the Union.

4. The written memorandum agreement memorializing the Hospital–Richardson Contract was drafted by plaintiff, dated June 25, 1986, and signed by plaintiff and Earl Stout's son, William Stout as "special assistant to the president of JFK Hospital."

informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial *Celotex* burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." *Id.* at 325, 106 S.Ct. at 2553. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 323, 106 S.Ct. at 2552. It is not the role of the Court to weigh the evidence, only to determine if there are triable issues. *See Country Floors v. Partnership of Gepner & Ford,* 930 F.2d 1056, 1062 (3d Cir.1991).[5]

## IV

### PLAINTIFF'S CLAIMS AGAINST JFK HOSPITAL

In count I, plaintiff asserts a claim against JFK Hospital for breach of a written contract. Before me are cross-motions for summary judgment in which the parties dispute the authority of (1) Earl Stout, JFK Hospital's former president and executive director, and (2) William Stout, Earl Stout's son who possessed the job title "special assistant to the president," to bind JFK Hospital to a contract without the approval of JFK Hospital's board of directors.

Under Pennsylvania law,[6] a corporation is a legal fiction that can act only by creating agency relationships with its officers, directors, employees, and others. *See*

*Biller v. Ziegler,* 406 Pa.Super. 1, 593 A.2d 436, 439 (1991). An agent can bind his principal if the agent has actual or apparent authority. *See Volunteer Fire Co. of New Buffalo v. Hilltop Oil Co.,* 412 Pa.Super. 140, 602 A.2d 1348, 1351–52 (1992). Actual authority can be express or implied. *See id.* at 1352. Express actual authority is the authority expressly granted to an agent by his principal. *See id.* Implied actual authority refers to the authority that is necessary, proper, and usual in the exercise of the agent's express authority. *See id.* Apparent authority exists where the principal, by words or conduct, leads people with whom the alleged agent deals to believe that the principal has granted the agent the authority he purports to exercise. *See id.* at 1353.

In performing his responsibilities on behalf of his principal, an agent may delegate to a subagent the authority to do any act within the scope of the agent's authority. *See Pennsylvania Co. for Ins. on Lives and Granting Annuities v. Home Ins. Co. of Am.,* 295 Pa. 286, 145 A. 286, 287 (1929); *Harris v. Sachse,* 160 Pa.Super. 607, 52 A.2d 375, 379 (1947); Restatement (Second) of Agency (the "Restatement") § 5 (1958).[7] A subagent can bind the principal to a third party contract when: (1) the subagent has the authority to form such a contract and (2) the agent has the authority to enter into the third party contract. *See Home Ins. Co. of Am.,* 145 A. at 287; *Sachse,* 52 A.2d at 379; Restatement §§ 5 cmt. d, 142 cmt. b.

William Stout possessed the job title of "special assistant to the president" and actually signed the written memorandum agreement on behalf of JFK Hospital. *See* Hospital–Richardson Contract dated June 25, 1986. Under JFK Hospital's bylaws, William Stout had no actual authority to sign contracts on behalf of JFK Hospital. *See* Tilgh-

---

**5.** Dismissal rather than summary judgment of one claim is sought. Because that one claim's dismissal depends upon summary judgment with respect to another claim, I need only apply the summary judgment standard.

**6.** In their briefs, the parties apply Pennsylvania law exclusively. Therefore, I will assume, without deciding, that Pennsylvania law controls the

disposition of plaintiff's and JFK Hospital's cross-motions for summary judgment.

**7.** The Pennsylvania Supreme Court has adopted several sections of the Restatement. *See Lerman v. Rudolph,* 413 Pa. 555, 198 A.2d 532, 533 (1964); *McKnight v. Peoples–Pittsburgh Trust Co.,* 360 Pa. 290, 61 A.2d 820, 822 (1948).

man Aff. at ¶ 5; Sutton Aff. at ¶ 4. Nevertheless, plaintiff testified that (1) his contract was with William Stout on behalf of JFK Hospital; (2) William Stout was the "everything man" at JFK Hospital; and (3) Earl Stout told plaintiff to contact William Stout whenever there arose a problem in connection with the Fund–Richardson Contract. *See* Richardson Dep. at 209–11, 635–36. Additionally, JFK Hospital was administered by the board of trustees of the Fund, and, like the Fund, Earl Stout substantially controlled the hospital's activities.[8] *See United States v. Stout*, 723 F.Supp. 297, 299 (E.D.Pa.1989) (setting forth uncontested facts). Plaintiff has therefore raised a genuine issue of material fact as to whether William Stout acted as Earl Stout's subagent and whether Earl Stout led plaintiff to believe that William Stout had authority to sign contracts on Earl's behalf with respect to JFK Hospital. Accordingly, the only remaining issue is whether Earl Stout himself had any authority to bind JFK Hospital to the Hospital–Richardson contract.

JFK Hospital's bylaws vest its president and executive director with the joint authority to enter into contracts on the hospital's behalf. *See* JFK Hospital's Bylaws at ¶¶ 6.1.4, 6.4.8; Sutton Dep. at 30–36. Earl Stout was JFK Hospital's executive director and president on June 25, 1986, the date the alleged contract was signed. *See Stout*, 723 F.Supp. at 299 (stating as undisputed fact that Earl Stout was executive director and president of JFK Hospital for more than thirteen years, ending on the date of his reelection defeat, May 10, 1988). Accordingly, Earl Stout may have had actual authority to enter into this contract with plaintiff on behalf of JFK Hospital. Plaintiff's and JFK Hospital's cross-motions for summary judgment with respect to count I are therefore denied.[9]

---

8. As a result of the interrelationship between the Fund and JFK Hospital, plaintiff may have reasonably understood that Earl Stout also meant that plaintiff should contact William Stout whenever a problem arose in connection with the Hospital–Richardson Contract.

9. JFK Hospital also moves for summary judgment with respect to counts IV and XII, the two remaining civil conspiracy counts, on the basis that these claims are time-barred. Because

## V

## PLAINTIFF'S CLAIM AGAINST THE FUND

In count II, plaintiff asserts a claim against the Fund for breach of a written contract. The parties have filed cross-motions for summary judgment, disputing the validity and enforceability of the contract. In addition, the Fund raises a statute of limitations defense.

On May 25, 1988, plaintiff's contract with the Fund was terminated. The parties agree that Pennsylvania's four year statute of limitations applies to actions founded upon written contracts. *See* 42 Pa.Cons.Stat.Ann. § 5525(8) (1993).[10] On May 19, 1992, plaintiff filed his original complaint in this Court in which he alleged claims against JFK Hospital, the Union, and Aetna. On May 3, 1993, plaintiff filed a second amended complaint dismissing his claim against the Union and substituting the Fund in its stead. Therefore, the claim against the Fund is time-barred unless the relation back doctrine of Federal Rule of Civil Procedure 15(c) permits the late addition of the Fund after the expiration of the limitations period.

Application of the relation back doctrine depends upon four factors, all of which must be satisfied: (1) the basic claim must have arisen out of the conduct set forth in the original pleading; (2) the party sought to be added must have received such notice that it will not be prejudiced in maintaining its defense; (3) the party sought to be added must or should have known that but for a mistake concerning identity, the action would have been brought against it; and (4) the second and third requirements must have been fulfilled within the period provided by Rule 4(j).

---

plaintiff concedes this issue, I will grant JFK Hospital's motion with respect to counts IV and XII.

10. Because there is no dispute with respect the application of Pennsylvania's four year statute of limitations, I will assume, without deciding, that Pennsylvania's four year limitations period governs.

*See* Fed.R.Civ.P. 15(c); *Schiavone v. Fortune,* 477 U.S. 21, 29, 106 S.Ct. 2379, 2384, 91 L.Ed.2d 18 (1986).[11]

The Fund concedes that the first, second, and fourth factors have been satisfied. To satisfy the third *Schiavone* factor, plaintiff, at the time he filed his complaint, must have committed some sort of mistake concerning the identity of the proper defendant. *See Great Northeastern Lumber & Millwork Corp. v. Pepsi–Cola Metro. Bottling Co.,* 785 F.Supp. 514, 516 (E.D.Pa.1992). Plaintiff bears the burden of establishing a record and a factual basis for his assertion that a mistake was made concerning the identity of the party he seeks to add as a defendant. *See In re Asbestos School Litigation,* 768 F.Supp. 146, 151 (E.D.Pa.1991). To determine whether such a "mistake" existed, the Court's inquiry is " 'limited to [plaintiff's] state of mind as of the time the initial complaint is filed.' " *Kress v. Hall–Houston Oil Co.,* No. 92–543, 1993 WL 166274, at *3 (D.N.J. May 12, 1993) (citation omitted). If, at the time of filing his initial complaint, plaintiff knew of the identity and possible role of the person whom plaintiff seeks to add as a defendant, there is no mistake for purposes of the relation back doctrine. *See id.* at *4; *Rhyder v. Santos,* No. 91–2920, 1992 WL 25863, at *2 (E.D.Pa. Feb. 5, 1992).

In this case, plaintiff has not presented any evidence whatsoever that would establish a factual basis for his assertion that a mistake was made concerning the identity of the Fund. In fact, the record seems to indicate otherwise. Namely, plaintiff's written memorandum agreement indicates that his contract was with the Union, not the Fund.[12] *See* The Fund–Richardson Contract dated Dec. 7, 1986. In his initial complaint, plaintiff chose to sue the Union, not the Fund. *See* Complaint. Yet plaintiff was aware as early as 1987, five years before filing his complaint, of the existence of and the relationships between the three interrelated entities—the Union, the Fund, and JFK Hospital. *See* Richardson Dep. at 228–29. Thus, plaintiff's mistake was that he entered into a contract with the wrong entity, not a mistake in identifying the party whom he wanted to sue. This mistake is not the type of mistake with which Rule 15(c) is concerned. Furthermore, even if this mistake was governed by Rule 15(c), plaintiff, at the time he filed his initial complaint, was well aware of the identity and possible role of the Fund but chose instead to sue only the Union. Accordingly, the relation back doctrine of Federal Rule of Civil Procedure 15(c) is not applicable, and plaintiff's claim against the Fund is time-barred. I therefore grant the Fund's motion for summary judgment and deny plaintiff's cross-motion for partial summary judgment with respect to count II. Because I decide in favor of the Fund based upon the statute of limitations, I need not reach the other issues raised by the parties.

## VI

## PLAINTIFF'S CLAIM AGAINST AETNA

Plaintiff asserts a claim against Aetna for breach of an oral contract. Aetna has moved for summary judgment, contending that plaintiff cannot establish the existence and terms of the alleged oral contract.

Under Pennsylvania law,[13] a plaintiff bears the burden of establishing the existence and terms of an oral contract by clear and precise evidence. *See Bergquist*

---

**11.** *Schiavone*'s fourth factor actually stated that the second and third factors had to be fulfilled within the prescribed limitations period. However, subsequent amendments to Rule 15(c) now provide for an extended time period to fulfill the second and third factors. *See* Fed.R.Civ.P. 15(c), Notes of Advisory Committee, 1991 Amendment.

**12.** Plaintiff testified that, at the time of the contract, he did not comprehend the existence of two entities—the Union and the Fund; instead, he grouped the two together under the name of the Union. *See* Richardson Dep. at 228–29.

**13.** In its brief in support of its motion for summary judgment, Aetna applies Pennsylvania substantive contract law exclusively. Plaintiff does not dispute any of the legal principles set forth by Aetna in its brief. Additionally, although he cites no substantive contract law in his reply, plaintiff has relied exclusively on Pennsylvania law with respect to all of his other submissions relating to motions that are currently before me. I will therefore assume, without deciding, that Pennsylvania law controls the disposition of Aetna's motion for summary judgment.

*Co. v. Sunroc Corp.,* 777 F.Supp. 1236, 1250 (E.D.Pa.1991). To satisfy the "clear and precise" evidentiary burden of proof with respect to the existence and terms of an oral contract, plaintiff need not set forth its terms with exact precision. *See Browne v. Maxfield,* 663 F.Supp. 1193, 1197–98 (E.D.Pa. 1987). Rather, " 'in order that a contract may be enforceable the promise or the agreement of the parties to it must be certain and explicit, so that their full intention may be ascertained to a reasonable degree of certainty.' Once it is determined that the parties intended to form a binding agreement, certainty of terms is important only as a 'basis for determining the existence of a breach and for giving an appropriate remedy.' " *See id.* at 1198 (citations omitted).

■■■ Assuming that Aetna met its initial *Celotex* burden, I nevertheless find that plaintiff has adequately rebutted to preclude summary judgment. Plaintiff testified that the terms of the alleged oral agreement were as follows: (1) Aetna agreed to act as a conduit to pass payments under the Liaison Contracts from the Insureds to plaintiff; (2) Aetna agreed to work with plaintiff to provide administrative services to the Insureds; (3) Aetna agreed not to conspire and interfere with plaintiff's contractual relations with the Insureds; (4) plaintiff and Aetna agreed to attempt to minimize costs to the Insureds; (5) plaintiff agreed to perform services that were designed to ensure that Aetna would be paid by the Insureds; and (6) plaintiff agreed to perform services in furtherance of Aetna's reputation. *See* Richardson Dep. at 608–12, 621. Thus, plaintiff has raised a genuine issue of material fact as to the existence and terms of the oral contract.

In addition, plaintiff testified that for a substantial period of time, both parties performed their obligations under the alleged oral contract. *See* Richardson Dep. at 608–12, 621. Thus, there is also a genuine issue of material fact with respect to the parties'

intent to be bound by the terms set forth above. Finally, the Insureds terminated plaintiff from his Liaison Contracts after Aetna officials informed the Insureds that plaintiff was not performing services on their behalf. *See* Sutton Dep. at 43–48; Tilghman Dep. at 109. This implies that Aetna may have interfered with plaintiff's contractual relations with the Insureds. Thus, there is also a genuine issue of material fact relating to Aetna's breach of the alleged oral contract. Accordingly, I deny Aetna's motion for summary judgment.

## VII

### RECOUPMENT

Plaintiff has moved to dismiss or to strike the Fund's counter-claim against plaintiff for recoupment. The Fund's counterclaim against plaintiff is expressly made contingent upon plaintiff's recovering from the Fund.[14] Because I granted the Fund's motion for summary judgment with respect to count II, plaintiff's claim against the Fund is no longer a part of this case. Therefore, the Fund's counter-claim for recoupment will be dismissed. Accordingly, I need not address the arguments that the parties set forth in their briefs relating to plaintiff's motion to dismiss the Fund's counterclaim.

## VIII

### CONTRIBUTION AND INDEMNIFICATION

With one exception, all three defendants seek, by way of cross-claims, contribution and/or indemnification from each of the other two defendants. JFK Hospital moves for summary judgment with respect to the cross-claims asserted against it by Aetna and the Fund. The Fund moves for summary judgment with respect to Aetna's cross-claim, but not with respect to JFK Hospital's cross-claim.[15] Aetna moves for summary judg-

---

14. The Fund alleges that "[t]o the extent that Plaintiff is permitted to recover any amounts from the defendant Fund arising from the employment relationship with the Defendant Fund, Defendant Fund is entitled to recoup from the Plaintiff that amount which represents the difference between the compensation paid to the

Plaintiff and the fair market value of Plaintiff's services." The Fund's First Amended Counter-Claim at ¶ 6.

15. Therefore, notwithstanding the discussion set forth below, JFK Hospital's cross-claim for con-

ment with respect to JFK Hospital's cross-claim. I address these cross-claims in turn.

## A. The Fund's Cross–Claim

The Fund sets forth a cross-claim for contribution and/or indemnification against JFK Hospital. The Fund's cross-claim is expressly made conditional upon its being found liable to plaintiff.[16] In part V of this Memorandum, I granted the Fund's motion for summary judgment. Accordingly, the Fund has no right to contribution and/or indemnification from JFK Hospital. I therefore grant JFK Hospital's motion for summary judgment with respect to the Fund's cross-claim.

## B. Aetna's and JFK Hospital's Cross–Claims

Aetna seeks contribution and/or indemnification from the Fund and JFK Hospital. JFK Hospital seeks contribution and/or indemnification from Aetna and the Fund.

 There is some dispute as to whether Pennsylvania or Connecticut substantive law controls the disposition of these motions. Sitting in diversity, this Court follows the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed. 1477 (1941); Ross v. Johns–Manville Corp., 766 F.2d 823, 826 (3d Cir.1985). Pennsylvania courts couple the "most significant relationship" test of the Restatement (Second) of Conflict of Laws (1971) with governmental "interest analysis" to determine the governing law. See Lacey v. Cessna Aircraft Co., 932 F.2d 170, 187 (3d Cir.1991). However, such an extensive choice of law analysis is not required in cases in which there is no conflict of law. See Smith v. Firemens Ins. Co. of Newark, N.J., 404 Pa.Super. 93, 590 A.2d 24, 27 (1991).

 Under Pennsylvania law, the right to contribution only arises among joint tortfeasors. See Eagle–Picher Indus., Inc. v. United States, 846 F.2d 888, 892 n. 4 (3d Cir.), cert. denied, 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988); TVSM, Inc. v. Alexander & Alexander, Inc., 583 F.Supp. 1089, 1092 (E.D.Pa.1984). Similarly, under Connecticut law, the right to contribution only arises among concurrent tortfeasors where the person from whom contribution is sought is the actively negligent party. See Therrien v. Safeguard Mfg. Co., 180 Conn. 91, 429 A.2d 808, 810 (1980). Therefore, regardless of whether Pennsylvania or Connecticut law governs, contribution only arises in cases involving concurrent tort liability. Plaintiff's remaining claims against JFK Hospital and Aetna are based upon contract, not tort, liability. Therefore, neither Aetna nor JFK Hospital enjoys the right to contribution.

 Unlike contribution, which involves equal apportionment of liability among concurrent tortfeasors, indemnification shifts the entire loss from one party to another. Under the laws of both Pennsylvania and Connecticut, indemnity is available only under the following circumstances: (1) where primary versus secondary or vicarious liability is present or (2) where there is an express contract to indemnify. See TVSM, Inc., 583 F.Supp. at 1091–92; Kaplan v. Merberg Wrecking Corp., 152 Conn. 405, 207 A.2d 732, 736–39 (1965).

 "'Secondary as distinguished from primary liability rests upon fault that is imputed or constructive only, being based upon some legal obligation between the parties or arising from some positive rule of statutory or common law.'" Higgins Erectors & Haulers, Inc. v. E.E. Austin & Son, Inc., 714 F.Supp. 756, 759 (W.D.Pa.1989) (quoting Eckrich v. DiNardo, 423 A.2d 727 (Pa.Super.1980)). Accord Merberg Wrecking Corp., 207 A.2d at 738 (applying Connecticut law). In Eckrich, secondary liability arose from a principal and agent relationship. In this case, no such legal relationship exists between Aetna, JFK Hospital, and the Fund.

---

tribution and/or indemnification against the Fund is still technically part of this case.

**16.** The Fund alleges that "[i]f the Fund is found liable to the Plaintiff for any damages as set forth in the Second Amended Complaint, no such lia-bility being admitted, JFK Hospital is liable over to the Fund for indemnification and/or contribution." The Fund's First Amended Cross–Claim at ¶ 2.

In addition, there is no positive rule of statutory or common law through which secondary liability can arise. Each defendant has a separate contract with plaintiff that gives rise to potential liability. None of these contracts creates secondary liability to any other contract. *See Higgins Erectors & Haulers, Inc.*, 714 F.Supp. at 759 (Pennsylvania law); *Merberg Wrecking Corp.*, 207 A.2d at 736 (Connecticut law). Accordingly, express contractual indemnity will provide the only means of recovery for defendants by way of cross-claim.

■ Under the laws of Pennsylvania and Connecticut, express indemnity contracts, like any other contracts, are construed to effectuate the contracting parties' intent as manifested from the contract's plain language and in light of the situation of the parties and the circumstances connected with the transaction. *See P.H. Glatfelter Co. v. Lewis*, 746 F.Supp. 511, 515 (E.D.Pa.1990); *Burr v. Lichtenheim*, 190 Conn. 351, 460 A.2d 1290, 1294 (1983).

■ With respect to JFK Hospital's cross-claims against Aetna, JFK Hospital seeks indemnity from Aetna for potential damages that it may sustain by reason of being found liable for breach of a written contract allegedly entered into with plaintiff. Aetna entered into an Insurance Contract with JFK Hospital in which Aetna agreed "to indemnify [JFK Hospital] and hold [JFK Hospital] harmless against any and all loss, damage, and expense with respect to this Contract resulting from or arising out of the dishonest, fraudulent, or criminal acts of Aetna's employees, acting alone or in collusion with others." Hospital–Aetna Contract at § 5(d). JFK Hospital offers some evidence implicating Aetna employees in a dishonest scheme, the conduit payment plan, to avoid the detection of plaintiff's contract with JFK Hospital by the hospital's board of directors.[17] The failure of the hospital's board to detect this contract at an early stage may be a reason that it could sustain potential damages for breach of contract. The plain language of this indemnity clause in the Hospital–Aetna Contract covers dishonest or fraudulent acts committed by Aetna's employees. Accordingly, JFK Hospital has raised a genuine issue of material fact precluding summary judgment on its cross-claim asserted against Aetna.

■ Aetna seeks indemnity from its Insureds—the Fund and JFK Hospital—for potential damages that Aetna may sustain on plaintiff's breach of oral contract claim. Aetna entered into Insurance Contracts with its Insureds in which the Insureds agreed "to save Aetna harmless by indemnifying Aetna for any and all loss, liability, damage, expense, or other cost or obligation, (i) resulting from and arising out of claims, demands or lawsuits brought against Aetna in administering the Plan, or to recover benefits under the Plan, except for acts attributable solely to Aetna's employees [resulting from failure on the part of Aetna to exercise ordinary care and diligence in performance of its duties], or (ii) in connection with the release and transfer of benefit payment information to [JFK Hospital/the Fund]." Hospital–Aetna Contract at § 5(f); Fund–Aetna Contract at § 5(f). Aetna's potential liability to plaintiff arises from its alleged failure to perform a promise to refrain from conspiring and interfering with plaintiff's contractual relations with the Insureds. This activity is not connected at all with administering the Fund's or JFK Hospital's medical insurance plans, paying out benefits under these medical insurance plans, or releasing and trans-

---

**17.** For example, James Sutton, a member of the board of directors at JFK Hospital, testifies that during the period in question, JFK Hospital paid money to Aetna for the services that plaintiff performed pursuant to plaintiff's contract with JFK Hospital, and Aetna turned over these payments to plaintiff. *See* Sutton Dep. at 149–50. In addition, Sutton testifies that Aetna employees were vague in relation to answers they gave to him regarding plaintiff's employment status with Aetna. *See id.* at 150–51. Moreover, Sutton indicated that he had no knowledge that plaintiff was performing services on behalf of JFK Hospital in a capacity other than as Aetna's employee. *See* Sutton Dep. at 46–48. Furthermore, Aetna's monthly billing statement sent to JFK Hospital contains a $2000 entry labelled "consultation fee" without any reference to plaintiff's name. *See* Administrative Charge Statement of 10/87. Based upon these submissions, a jury could infer that Aetna employees participated with plaintiff in a dishonest act to conceal improper payments from JFK Hospital to plaintiff.

**991**

ferring benefit payment information. The plain language of these indemnity provisions does not cover Aetna's potential liability to plaintiff. Accordingly, Aetna is not entitled to recover from the Fund or JFK Hospital for indemnification.

## IX

### CONCLUSION

This action has been reduced to the following claims: plaintiff's claims for breach of contract against JFK Hospital and Aetna; and JFK Hospital's cross-claim for contribution and/or indemnification against the Fund and cross-claim for indemnification against Aetna.

### ORDER

AND NOW, this 22nd day of October, 1993, upon consideration of plaintiff's motion for partial summary judgment (docket entry no. 59), plaintiff's motion to dismiss (docket entry no. 60), the Fund's motion for summary judgment (docket entry no. 61), Aetna's motion for summary judgment on the cross-claim (docket entry no. 62), Aetna's motion for summary judgment on plaintiff's claim (docket entry no. 63), JFK Hospital's motion for summary judgment (docket entry no. 64), and all papers filed in support thereof and in opposition thereto, IT IS ORDERED, for the reasons stated in the accompanying Memorandum, that:

1. Plaintiff's motion for partial summary judgment (docket entry no. 59) IS DENIED.

2. Plaintiff's motion to dismiss (docket entry no. 60) is GRANTED. The Fund's counter-claim for recoupment that is asserted against plaintiff is hereby DISMISSED.

3. The Fund's motion for summary judgment (docket entry no. 61) IS GRANTED. Judgment is hereby entered in favor of the Fund and against plaintiff on count II. Judgment is hereby entered in favor of the Fund and against Aetna on Aetna's cross-claim against the Fund for contribution and/or indemnification.

4. Aetna's motion for summary judgment on the cross-claim (docket entry no. 62) IS GRANTED IN PART AND DENIED IN PART. Judgment is hereby entered in favor of Aetna and against JFK Hospital with respect to JFK Hospital's cross-claim for contribution.

5. Aetna's motion for summary judgment on plaintiff's claim (docket entry no. 63) IS DENIED.

6. JFK Hospital's motion for summary judgment (docket entry no. 64) IS GRANTED IN PART AND DENIED IN PART. Judgment is hereby entered in favor of JFK Hospital and against plaintiff on the civil conspiracy claims (counts IV and XII). Judgment is hereby entered in favor of JFK Hospital and against the Fund with respect to the Fund's cross-claim against JFK Hospital for contribution and/or indemnification. Judgment is hereby entered in favor of JFK Hospital and against Aetna on Aetna's cross-claim against JFK Hospital for contribution and/or indemnification.